IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**CASE NO.: 13-60384-CIV-COHN-SELTZER**

RICHARD REMINGTON and URSULA
FINKEL, on their own behalf
and on behalf of those similarly situated,

    Plaintiffs,

v.                                                                                        **CLASS ACTION**

NEWBRIDGE SECURITIES
CORPORATION,

    Defendant.
_____/

**AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Richard Remington ("Remington") and Ursula Finkel ("Finkel"), on behalf of themselves and of those similarly situated (collectively, the "Customers" or "Class Members"), by and through undersigned counsel, sue Defendant Newbridge Securities Corporation ("Newbridge"), and allege the following based upon personal knowledge as to the allegations regarding themselves, and on information and belief as to other allegations:

**INTRODUCTION**

1. This lawsuit is brought as a class action by and on behalf of Customers whom Newbridge charged an excessive, variable and arbitrary "handling fee" each time it executed a trade for its Customers, despite the fact that its Customers never agreed to pay such a fee.

2. This handling fee, which ranged from $5.00 to $49.95 for each trade, was charged to Customers *in addition to* the trade commission that Newbridge earned on these transactions. These excessive "handling fees" bore no reasonable relationship to the actual "handling" costs

-1-

associated with these transactions, were not agreed to as part of Newbridge's customer agreements, and varied arbitrarily and discriminately across Newbridge's different branch locations. As a result, Customers involuntarily paid Newbridge a fee that they never agreed to, which earned Newbridge substantial profits at its Customers' expense.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed Class is a resident of a different state than Newbridge.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Newbridge is subject to personal jurisdiction here and regularly conducts business in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in that district.

5. This Court has personal jurisdiction over Newbridge because it is engaged in substantial and not isolated activity within this state, having its principal place of business in Broward County, Florida. Additionally, the causes of action brought in this Complaint arise from Newbridge (a) operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; (b) committing a tortious act within this state; and/or (c) breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

## PARTIES

6. Plaintiff Remington is a resident of the State of California.

7. Plaintiff Finkel is a resident of the State of North Carolina.

8. Defendant Newbridge is a Virginia Corporation which maintains its principal place of business in Fort Lauderdale, Broward County, Florida, and is authorized to do business here. Among other things, Newbridge is engaged in the business of providing securities brokerage services to individuals and corporate clients. It is a member of the Financial Industry Regulatory Authority (FINRA) and the Securities Investor Protection Corporation (SIPC). According to its website (www.newbridgesecurities.com) Newbridge maintains offices in Florida, New Jersey, New York, Illinois, and Arizona.

## CLASS ACTION ALLEGATIONS

9. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

10. The proposed Class is defined as:

All former and current Newbridge customers in the United States from whom, within the applicable statute of limitations preceding the original filing of this action, Newbridge deducted, retained, and/or charged a "handling fee" that its customers did not agree to.

11. Excluded from the Class are Newbridge, its parents, subsidiaries, affiliates, officers and directors, any entity in which Newbridge has a controlling interest, all customers who make a timely selection to be excluded, governmental entities, all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and any of the foregoing's legal heirs and assigns.

12. Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

**RICHMAN GREER, P.A.**
Miami ● West Palm Beach

13.     Plaintiffs do not currently know the exact number of Class Members or their identities because such information is in the exclusive control of Newbridge and can only be ascertained by review of its records.  However, Plaintiffs believe that Class Members number in the thousands, and are thus sufficiently numerous and geographically dispersed so that joinder of all Class Members is impracticable.  Plaintiffs further believe that each Class Member, including themselves, were charged the "handling fee" on several, and perhaps, hundreds or thousands of occasions, such that the amount in controversy will easily exceed $5,000,000.00.

14.     The claims of the Plaintiffs are typical of the Class, in that Plaintiffs, like all Class Members, were charged this excessive, variable and arbitrary "handling fee" that was never agreed to.  Further, the factual basis of Newbridge's misconduct is common to all Class Members, and resulted in injury to all Class Members.

15.     Pursuant to Rule 23(b)(3), there are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class Members, including whether Newbridge:

  a. Charged its Customers a "handling fee" that varied from branch to branch in an amount between $5.00 and $49.95, which the parties did not agree to;

  b. Charged a "handling fee" that was excessive;

  c. Charged a "handling fee" that was grossly disproportionate to the actual "handling" costs incurred by Newbridge;

  d. Breached its contract and its duty of good faith and fair dealing to its Customers by charging an excessive, variable, profit-generating "handling fee" that was not agreed to;

  e. Was negligent by charging an excessive, variable, profit-generating "handling fee" on each Customer transaction that was not agreed to; and

  f. Converted its Customers' funds by asserting ownership over such funds to pay for these "handling fees" that were not agreed to.

16. Additionally, another common question of law and fact is the appropriate measure of damages sustained by Plaintiffs and other Class Members.

17. A class action is superior to other methods for the fair and efficiency adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense, and risk of inconsistent rulings that numerous individual actions would cause. Class treatment will also permit the adjudication of relatively small claims by Class Members who otherwise might not be able to afford to litigate their claims individually. This class action presents no difficulties in management that would preclude maintenance as a class action.

18. This forum is particularly desirable for the prosecution of this class action because Newbridge maintains its principal place of business in this District, and presumably maintains many of those corporate records which are particularly germane to this action here. Furthermore, upon information and belief, many of Newbridge's executives and high-level decision makers reside in this District. As a result of the foregoing, litigating on a class action basis in this forum will likely decrease the cost of discovery and prosecution, generally.

19. Plaintiffs have suffered the harm alleged on behalf of the Class, and have no interests antagonistic to the interests of any other Class Members. They are committed to the prosecution of this action and have retained counsel experienced in the prosecution of class actions, and in complex commercial actions in particular. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class. Plaintiffs are not aware of any other pending litigation concerning this controversy that involves Class Members.

20. Finally, the Class is readily definable and is one for which records likely exist in the files of Newbridge.

## COMMON FACTUAL ALLEGATIONS

21. Newbridge was formed in December 1997.  Since 2000 it has been registered as a broker-dealer with the SEC and FINRA.  Since September 2003 and July 2006, it has been registered with the NYSE and NASDAQ, respectively.  It currently operates in 52 states and territories.

22. Throughout its existence, Newbridge has been no stranger to controversy, reprimand, and sanction.  According to the BrokerCheck® report provided by FINRA, as of March 28, 2013 Newbridge has been involved in 18 regulatory events in a span of less than 10 years.  These include regulatory actions brought against Newbridge by the SEC, FINRA, NASD, the Florida Office of Financial Regulation, the North Carolina Department of Insurance, and the Connecticut Department of Banking.  Collectively, these regulatory actions have resulted in fines against Newbridge in excess of $1.3 million, in addition to orders of restitution, disgorgement, injunctive relief, and censure.

23. In one of those regulatory actions, the State of Connecticut, through its Department of Banking Securities and Business Investments Division, conducted an examination of Newbridge's books and records with regards to the very "handling fees" that form the basis for this Complaint.

24. According to Newbridge's own submissions in that proceeding, Newbridge acknowledged charging its customers a "handling fee" that ranged anywhere from $5.00 to $49.95 per transaction.  The "handling fees" varied by branch office depending on the size, location, business conducted, and overall cost structure of the offices.

25. In other words, Newbridge utilized this "handling fee" as a means to ensure a certain level of profitability for each of its branch locations. Although Newbridge characterized it as a "handling fee" it bore no reasonable relationship to the actual "handling" charges or expenses that Newbridge incurred.

26. The "handling fee" was effectively nothing more than a second, unauthorized commission that Newbridge charged to Plaintiffs and all Class Members. Newbridge withdrew this fee directly from Plaintiffs' and all Class Members' accounts with Newbridge prior to their receipt of any confirmation evidencing a particular transaction.

27. In the customer agreement that Plaintiffs and all Class Members were required to execute in order to make trades through Newbridge, the Customers did not agree to pay this variable "handling fee" that could range anywhere from $5.00 to $49.95 per transaction. Plaintiffs are not currently in possession of their executed customer agreements, but expect to obtain them, as well as the customer agreements for all Class Members, through discovery.

28. Moreover, the transaction confirmation statements that Newbridge sent to Plaintiffs and all Class Members failed to disclose that Newbridge had charged this "handling fee", and failed to specify the amount charged. Nor did it define what the "handling fee" was, or explain why it was charged.

29. Plaintiffs and the Class Members did not agree to being charged this excessive, variable and arbitrary "handling fee." Nor did Plaintiffs and the Class Members know that some of them were being charged more than others, depending on the branch they did business with.

30. All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

## COUNT I
### (Breach of Contract)

31.     Plaintiffs re-allege paragraphs 1 through 30 above as if fully set forth herein.

32.     Plaintiffs (and all Class Members) and Newbridge entered into a valid customer agreement with Newbridge for it to provide broker-dealer related services to Plaintiffs (and all Class Members).

33.     As part of that contract, Plaintiffs and all Class Members expressly agreed to pay certain fees associated with the services provided by Newbridge.

34.     Plaintiffs and all Class Members did not agree in those contracts to pay the excessive, variable and arbitrary "handling fee" that Newbridge charged each time it executed a trade for its Customers.

35.     By in fact charging such a fee, Newbridge breached its contract with Plaintiffs and the Class Members.

36.      Plaintiffs and the Class have performed all, or substantially all, of the obligations imposed on them under their contracts with Newbridge.

37.     Plaintiffs and the Class have suffered damages as a result of Newbridge's breaches of contract.

## COUNT II
### (Breach of the Covenant of Good Faith and Fair Dealing)

38.     Plaintiffs re-allege paragraphs 1 through 30 above as if fully set forth herein.

39.     Plaintiffs (and, upon information and belief, all Class Members) and Newbridge contracted for Newbridge to provide broker-dealer related services to Plaintiffs (and all Class Members).

40. The implied covenant of good faith and fair dealing is a part of every contract. Good faith means honesty, in fact, in the conduct of contractual relations.

41. It applies when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards. In essence, where the terms of the contract afford a party substantial discretion to promote the party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.

42. Although the parties' customer agreements may have provided that Plaintiffs and the Class Members could be charged certain fees by Newbridge, Newbridge breached the covenant of good faith and fair dealing by charging Plaintiffs and all Class Members an excessive, variable and arbitrary "handling fee" that bore no relationship to the actual "handling" costs Newbridge incurred. Instead, it was merely a means for Newbridge to ensure a requisite level of profitability for its branch offices.

43. Newbridge also breached the covenant of good faith and fair dealing by charging certain Customers a higher fee than others based solely on the branch they traded through.

44. Plaintiffs and the Class have performed all, or substantially all, of the obligations imposed on them under their contracts with Newbridge.

45. Plaintiffs and the Class have suffered damages as a result of Newbridge's breach of the covenant of good faith and fair dealing.

## COUNT III
### (Negligence)

46. Plaintiffs re-allege paragraphs 1 through 30 above as if fully set forth herein.

47. As Plaintiffs' and the Class Members' securities broker, Newbridge owed them a duty of care in accordance with the standard of care used by similar professionals in the

RICHMAN GREER, P.A.
Miami • West Palm Beach

community under similar circumstances.  That includes, but is not limited to, a duty to act in the best interests of its Customers without regard to its own financial or other interests.

48. Although exchange rules might not provide for a private right of action, they do set forth the standards of care that are expected of broker-dealers such as Newbridge with regard to the imposition of fees.  Under FINRA Rule 2430 (formerly NASD Rule 2430), firms such as Newbridge are prohibited from charging unreasonable fees or fees that unfairly discriminate among the firm's customers for miscellaneous services.

49. Newbridge breached its duty, and the standard of care expected from similar professionals in the community under similar circumstances, by charging Plaintiffs and all Class Members excessive, variable and arbitrary "handling fee" that they never agreed to, and that bore no relationship to the actual "handling" costs Newbridge incurred.  Newbridge futher breached that duty by charging certain customers a higher fee than others based solely on the branch they traded through.

50. As a result, Plaintiffs and the Class have suffered damages, of which Newbridge's breach of duty was the legal cause.

## COUNT IV
### (Conversion)

51. Plaintiffs re-allege paragraphs 1 through 30 above as if fully set forth herein.

52. Each time Newbridge charged Plaintiffs and the Class Members the excessive, variable and arbitrary "handling fee" that they never agreed to and that bore no relationship to the actual "handling" costs Newbridge incurred in the transaction, Newbridge withdrew the fee directly from the funds that Plaintiffs and the Class Members maintained in their accounts with Newbridge.

-10-

53. Newbridge wrongfully charged these fees, and in doing so, has taken specific and readily identifiable funds from Plaintiffs' and the Class Members' investment accounts to satisfy payment of those fees.

54. Newbridge wrongfully asserted dominion and ownership of those funds, in hostility to the ownership rights of Plaintiffs and the Class Members, and with an intent to permanently deprive Plaintiffs and the Class Members of those funds.

55. Newbridge continues to retain those funds unlawfully and without the consent of Plaintiffs or the Class Members.

56. Plaintiffs and the Class Members are entitled to the immediate possession of these funds.

57. As a direct and proximate result of this wrongful conversion, Plaintiffs and the Class have suffered damages.

## JURY DEMAND

58. Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of all other similarly situated, pray for relief and judgment as follows:

A. Certifying the proposed Class and approving Plaintiffs Remington and Finkel as class representatives;

B. Appointing Richman Greer, P.A., The Law Offices of Place & Hanley, PLLC, and Blum Law Group as class counsel;

C. Awarding Plaintiffs and the Class damages in an amount to be proven at trial, along with costs, interest, an attorneys' fees; and

D. Awarding any further relief the Court deems just and proper.

Dated: April 1, 2013                Respectfully submitted,

By:   s/ Lyle E. Shapiro
Lyle E. Shapiro (FBN: 0120324)
lshapiro@richmangreer.com
Manuel A. Garcia-Linares (FBN: 0985252)
mlinares@richmangreer.com
Eric M. Sodhi (FBN: 0583871)
esodhi@richmangreer.com
Joshua L. Spoont (FBN: 053263)
jspoont@richmangreer.com
RICHMAN GREER, P.A.
396 Alhambra Circle
North Tower, 14th Floor
Miami, Florida 33134
Telephone: (305) 373-4000
Facsimile: (305) 373-4099
*Attorneys for Richard Remington and Ursula Finkel, on their own behalf and on behalf of those similarly situated.*

## CERTIFICATE OF SERVICE

I HEREBY certify that on April 1, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   s/  Lyle E. Shapiro

**SERVICE LIST**

Richard Remington, et al. vs. Newbridge Securities Corporation
CASE NO. 13-60384-CIV-COHN-SELTZER
United States District Court, Southern District of Florida

|  |  |
| --- | --- |
| Lyle E. Shapiro<br>lshapiro@richmangreer.com<br>Manuel A. Garcia-Linares<br>mlinares@richmangreer.com<br>Eric M. Sodhi<br>esodhi@richmangreer.com<br>Joshua L. Spoont<br>jspoont@richmangreer.com<br>RICHMAN GREER, P.A.<br>396 Alhambra Circle, North Tower, 14th Floor<br>Miami, FL 33134<br>*Attorneys for Plaintiffs*<br>**(VIA CM/ECF)** | Randall C. Place, Esq.<br>Place and Hanley, PLLC<br>30 Town Square Blvd, Suite 202<br>Asheville, N.C. 28803<br>randall_place@placeandhanley.com<br>*Attorneys for Plaintiffs*<br>**(VIA ELECTORNIC MAIL)** |
| Darren Blum, Esq.<br>Blum Law Group<br>110 E. Broward Blvd.<br>Suite 1700<br>Ft. Lauderdale, FL 33301<br>blum@stockattorneys.com<br>*Atorneys for Plaintiffs*<br>**(VIA ELECTORNIC MAIL)** | Gregg J. Breitbart, Esq.<br>Kaufman Dolowich Voluck & Gonzo LLP<br>2101 N.W. Corporate Blvd., Suite 218<br>Boca Raton, FL 33431<br>gbreitbart@kdvglaw.com<br>*Attorneys for Defendant*<br>**(VIA CM/ECF)** |
| Dennis A. Nowak, Esq.<br>Fowler White Burnett, P.A.<br>Espirito Santo Plaza, Fourteenth Floor<br>1395 Brickell Avenue<br>Miami, FL 33131<br>dnowak@fowler-shite.co<br>*Attorneys for Defendant*<br>**(VIA CM/ECF)** |  |