UNTIED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-60384-CIV-COHN/SELTZER

RICHARD REMINGTON and URSULA
FINKEL, on their own behalf and on
behalf of those similarly situated,

    Plaintiffs,

v.

NEWBRIDGE SECURITIES
CORPORATION,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon the Motion to Dismiss Amended Class Action Complaint [DE 28], filed by Defendant Newbridge Securities Corporation ("Newbridge"). The Court has considered the motion, Plaintiffs' response [DE 45], Newbridge's reply [DE 47], the record in this case, and is otherwise fully advised in the premises.

### I. BACKGROUND

Newbridge is a securities broker-dealer, formed in 1997, and registered with the Securities and Exchange Commission ("SEC"), Financial Industry Regulatory Authority ("FINRA"), New York Stock Exchange ("NYSE"), and the NASDAQ Stock Exchange ("NASDAQ"). DE 19 ¶ 21. Over its history, Newbridge has worked with three different clearinghouses in delivering its services to customers. From its founding up to June 1, 2008, Newbridge used National Financial Services ("NFS"). From June 1, 2008 through September 1, 2012, Newbridge worked with Legent Clearing, LLC ("Legent"). Since

September 2, 2012, Newbridge has contracted with COR Clearing, LLC ("COR"). See DE 28 at 5 n.3. During these time periods, Newbridge used slightly different forms for its customer agreements, each of which contained information regarding fees charged to customers. See DE 45 at 12-14.

Plaintiffs Richard Remington and Ursula Finkel were customers of Newbridge. See DE 19 ¶¶ 1, 9-10. They allege that Newbridge breached the customer agreements by charging an unauthorized handling fee to customers, including Plaintiffs and putative Class Members, each time Newbridge executed a trade on their behalf. Id. ¶¶ 1-2, 24. The fee allegedly ranged from $5.00 to $49.95 per trade. Id. ¶ 24. Plaintiffs further claim that the fee was "excessive, variable, and arbitrary," bore no relationship to actual handling costs, was not part of their agreement with Newbridge, and that different branch offices charged different rates. Id. ¶¶ 1-2, 24. Plaintiffs assert that the fee operated as "a means to ensure a certain level of profitability for each of [Newbridge's] branch locations," and "was effectively nothing more than a second unauthorized commission that Newbridge charged" to its customers. Id. ¶¶ 25-26.

On January 8, 2013, Remington filed a class-action suit against Newbridge in the Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, bringing several state-law claims pertaining to the handling fee. See DE 1-1. Newbridge removed the action to this Court on February 19, 2013, alleging federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 78bb.[1] On February 16, 2013,

---

[1] Title 15 U.S.C. § 78bb(f)(1)(A) provides for the removal of class actions of 50 or more class-members which allege a misrepresentation of a material fact in connection with the purchase of securities listed on a national securities exchange. See 15 U.S.C. § 78bb(f)(1)(A). The Amended Complaint alleges that "Class Members

Newbridge filed a Motion to Dismiss Class Action Complaint [DE 9] ("first motion to dismiss").  On April 1, 2013, Plaintiffs filed an Amended Class Action Complaint [DE 19] ("Amended Complaint"), adding Finkel as a Plaintiff and making several substantive changes to the pleadings.  Accordingly, the Court denied the first motion to dismiss as moot.  See DE 21.

In the Amended Complaint, Plaintiffs bring the following four claims: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) negligence, and (4) conversion.  In the instant motion, Newbridge moves to dismiss all four counts of the Amended Complaint for failure to state a claim.  Plaintiffs oppose the motion.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); and Conley v. Gibson, 355 U.S. 41, 47 (1957)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

---

number in the thousands," and the suit directly relates to the misrepresentation of a fee incurred in trading securities.  See DE 19 ¶ 13.  Moreover, the Amended Complaint properly asserts that the Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate claims of the putative class exceed $5,000,000, and at least one of the members of the class is a resident of a different state than Newbridge.  See id. ¶¶ 3, 6-8.  Thus, the Court concludes that it has subject-matter jurisdiction over this action.

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  At this stage in the litigation, the Court must consider the factual allegations in the complaint as true, and accept all reasonable inferences therefrom.  Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).  Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

Here, Newbridge asserts, and Plaintiffs do not dispute, that this action is governed by New York and Massachusetts law.  The Legent and COR customers agreements provide that the agreements "and all transactions made in [the customer's] account" are governed by New York law [DE 28-1 at 15, 33], while the NFS agreement is governed by Massachusetts law [DE 28-1 at 11].  Therefore, for the purpose of this motion, the Court will apply the laws of New York and Massachusetts, respectively.

### III. ANALYSIS

As noted above, Newbridge seeks to dismiss all four counts of the Amended Complaint for failure to state a claim for relief.  The Court will address the sufficiency of each count in turn.

**A. Count I: Breach of Contract**

In Count I, Plaintiffs allege that Newbridge entered into customer agreements with Plaintiffs and putative Class Members, and that Newbridge breached those agreements by charging excessive, arbitrary, and variable handling fees that bore no relationship to the cost of shipping or handling. Newbridge moves to dismiss Count I on two grounds.

*i. Sufficiency of the Pleadings*

First, Newbridge asserts that Count I is insufficiently pleaded because it does not contain specific allegations as to the contract between the parties and the terms of such contract. The Court agrees. In New York, a breach of contract claim requires "(1) [the existence of] a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000) (internal citations omitted). Similarly, a party claiming breach of contract under Massachusetts law "must allege that a valid, binding agreement exists between the parties, that the defendant breached its duties under the contract, and that this breach caused damage to the plaintiff." Saint Consulting Grp., Inc. v. Endurance Am. Specialty Ins. Co., No. 11-11279-GAO, 2012 U.S. Dist. LEXIS 45474, at *9 (D. Mass. Mar. 30, 2012) (citing Guckenberger v. Boston Univ., 974 F. Supp. 106, 149 (D. Mass. 1997)).

However, merely alleging that the contract as a whole was breached is not enough to state a claim. Plaintiffs must also "identify what provisions of the contract were breached as a result of the acts at issue." Wolff v. Rare Medium, Inc., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001); see also CreditSights, Inc. v. Ciasullo, No. 05-CV-9345, 2008 U.S. Dist. LEXIS 91481, at *32 (S.D.N.Y. Sept. 5, 2008) (holding that "New

York law is eminently clear that a proper breach of contract claim must identify specifically breached contract terms."); Backman v. Smirnov, 751 F. Supp. 2d 304, 311 (D. Mass. 2010) (explaining that a breach of contract claim requires that the plaintiff show the defendant's "failure . . . to conform to one or more of the contract's material terms."). In Wolff, the plaintiff alleged that "'[t]he Attempted Transactions were clearly permitted and it was a breach of the Acquisition Agreement for [the defendant] to block them.'" The court dismissed the breach of contract claim, finding that such limited allegations "fail[ed] to provide [the defendant with] notice of the contractual provision allegedly breached or the nature of the breach." Id. at 358; see also Zaro Licensing, Inc. v. Cinmar, Inc., 779 F. Supp. 276, 286 (S.D.N.Y. 1991) (dismissing breach of contract claim because plaintiffs did not specify which contractual provision was breached, or that plaintiffs complied with the contracts at issue); Harvard Law Sch. Coal. for Civil Rights v. President & Fellows of Harvard Coll., 413 Mass. 66, 71 (1992) (dismissing breach of contract claim for failing to set out which provisions of the contract were breached).

Plaintiffs' allegations in this case are similarly deficient. Plaintiffs claim that the handling fee violated the terms of the agreements, but are unable to set forth exactly which terms were violated. Indeed, Plaintiffs implicitly admit as much at paragraph 27 of the Amended Complaint, where they state:

> In the customer agreement that Plaintiffs and all Class Members were required to execute in order to make trades through Newbridge, the Customers did not agree to pay this variable "handling fee" that could range anywhere from $5.00 to $49.95 per transaction. **Plaintiffs are not currently in possession of their executed customer agreements**, but expect to obtain them, as well as the customer agreements for all Class Members, through discovery.

6

DE 19 ¶ 27 (emphasis added).  Thus, because Plaintiffs have not alleged which contractual terms Newbridge has breached, the Court finds that Count I is inadequately pleaded and must be dismissed.

*ii. Breach of the Customer Agreements*

Second, Newbridge contends that Count I should be dismissed with prejudice because Newbridge did not in fact breach the customer agreements.  Rather, Newbridge asserts, the fees were disclosed to Plaintiffs and Plaintiffs agreed to paying them.  Each of the customer agreements included a fee schedule.  Newbridge points out that the fees schedule all contained a legend, which, while varying in its precise wording over time, provided essentially that:

> The above fees for services provided by [the clearinghouse] may be charged to your account at the time of or prior to the service being rendered.  Newbridge may receive a portion of the fees charged by the clearing firm (including, but not limited to, margin interest).  Revisions will be provided to clients at least 30 days before the implementing of new or revised fees.  Please contact your account executive if you have any questions or need additional information.

DE 28 at 7; DE 28-2 at 1-6.  With regard to the handling fee, Newbridge provides evidence that, beginning in December 2010, the fee schedules included an additional legend, which stated:

> Order Handling Fee: Customer transactions may be charged a "Handling Fee", which is disclosed via each customer confirmation.  This fee is comprised of processing/operational costs assessed by Legent & Newbridge.  All parties, including your broker, may receive remuneration of this fee in varying percentages.  This fee may also vary for each broker based upon various factors including geographic office location.  Contact your broker or Newbridge's home office for further details.

DE 28 at 8; DE 28-2 at 7-12.  Additionally, Newbridge asserts that the Legent confirmation statements contained a legend which provided that, "When applicable,

7

your investment firm and/or Legent may charge additional fees for services and/or costs associated with the purchase or sale of securities." DE 28 at 8.

Plaintiffs respond that even if the customer agreements allowed for handling fees, they did not authorize Newbridge to charge handling fees at any rate it chose. Rather, Newbridge was contractually limited to charging fees at the then-prevailing rate for such fees. In support, Plaintiffs point out that the customer agreements used from June 1, 2008 through the present all contain the following provision:

> 27. Fees and Charges. I understand there are charges for commissions and fees for executing buy and sell orders and for other services provided under this agreement. **I agree to pay such commissions and fees at the then-prevailing rate.** I acknowledge that the prevailing rate of commissions and fees may change and that change may occur without notice. I agree to be bound by such changes.

DE 28-1 at 16, 25, 34 (emphasis added). Plaintiffs aver that the term "then-prevailing rate" creates an objective standard, reflective of an average, reasonable amount charged in the industry. Thus, Plaintiffs argue, Newbridge breached the customer agreements because the charges labeled as handling fees bore no relation to the then-prevailing rate for handling. Alternatively, Plaintiffs contend that Newbridge breached the agreements by violating FINRA Rule 2430, which Plaintiffs claim is incorporated into the agreements by reference. The NFS agreement contains a provision which states that "[a]ll transactions through NFS are subject to the rules, guidelines, and customs of the marketplace where they are executed . . . as well as applicable state and federal laws . . . ." DE 28-1 at 11. Similarly, the Legent and COR agreements provide that they are "governed by the laws of the State of New York, [. . .] except to the extent governed by federal securities law, the Federal Arbitration Act, and the constitution, rules,

8

regulations, customs, and usage of the exchanges or market (and its clearinghouse) where executed." Id. at 15, 24, 33.  Plaintiffs argue that Rule 2430 qualifies as an applicable rule of the exchange or market, and Newbridge's violation thereof constitutes breach of contract.

Newbridge's reply is twofold.  First, Newbridge contends that compliance with Rule 2430 is not incorporated into the customer agreements, and a violation of the rule would not constitute breach of contract.  However, even assuming, *arguendo*, that Newbridge is correct on this point, Newbridge fails to address Plaintiffs' argument concerning breach of the 'then-prevailing rate' provision.  Second, Newbridge again asserts that Plaintiffs' claims are insufficiently supported by facts in the Amended Complaint.  For the reasons stated above, the Court agrees with this assertion. Nonetheless, the proper remedy in this case is to dismiss Count I with leave to amend.  As Plaintiffs acknowledge, they did not have copies of the customer agreements at the time they filed their Amended Complaint.  They now have access to such documents, and will be permitted to use them to replead Count I.

### B. Count II: Breach of Covenant of Good Faith and Fair Dealing

In Count II, Plaintiffs claim that Newbridge violated the implied covenant of good faith and fair dealing in the customer agreements "by charging Plaintiffs and all Class Members an excessive, variable, and arbitrary 'handling fee' that bore no relationship to the actual 'handling' costs Newbridge incurred."  DE 19 ¶ 42.  Newbridge argues that Count II should be dismissed because it is duplicative of Count I.  This argument is meritorious.  In New York, "a claim for breach of an implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract

9

claim." Spread Enters. v. First Data Merch. Servs. Corp., No. 11-CV-4743, 2012 U.S. Dist. LEXIS, at *7 (E.D.N.Y. Aug. 22, 2012) (citing Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002)). A claim for breach of the implied covenant of good faith will fail if it is "based on the same facts as a claim for breach of contract." McGee v. State Farm Mut. Auto. Ins. Co., No. 09-Civ-3579, 2011 U.S. Dist. LEXIS 128913, at *26 (E.D.N.Y. Nov. 8, 2011). Similarly, Massachusetts law provides that a claim for breach of the covenant of good faith and fair dealing is duplicative of a breach of contract claim where the same conduct forms the predicate for both claims. See Sorenson v. H&R Block, Inc., No. 99-10268-DPW, 2002 U.S. Dist. LEXIS 18689, at *49-50 (D. Mass. Aug. 27, 2002). Here, both Counts I and II are based on Newbridge's allegedly charging an "excessive, variable, and arbitrary 'handling fee.'" DE 19 ¶¶ 34, 42. Plaintiffs make no effort in their response to distinguish the factual bases for the two claims. Accordingly, the Court concludes that Count II must be dismissed as duplicative of Count I.

### C. Count III: Negligence

In Count III, Plaintiffs allege that Newbridge negligently breached its duty to act in the best interests of its customers, including Plaintiffs and putative Class Members. DE 19 ¶ 47. Plaintiffs claim that the standard of care for broker-dealers such as Newbridge with regard to the imposition of fees is governed in part by FINRA Rule 2430, Charges for Services Performed. See DE 19 ¶¶ 47-49. Rule 2430 provides that "Charges, if any, for services performed, including miscellaneous services such as collection of moneys due for principal, dividends, or interest; exchange or transfer of securities; appraisals, safe-keeping, or custody of securities, and other services, shall

be reasonable and not unfairly discriminatory between customers." FINRA Rule 2430. Plaintiffs claim that Newbridge violated Rule 2430 by charging excessive, variable, and arbitrary fees, and by charging different fees to customers who traded through different branch offices. DE 19 ¶ 49. Therefore, Plaintiffs allege that Newbridge breached its duty of care to Plaintiffs and putative Class Members, and caused them damage. In the instant motion, Newbridge argues that Count III should be dismissed for two reasons.

*i. Rule 2430 as the Standard of Care*

First, Newbridge argues that FINRA Rule 2430 does not create a private cause of action for negligence. This argument is unavailing, and mischaracterizes Plaintiffs' claim. As Plaintiffs point out, the court in Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Cheng, 697 F. Supp. 1224 (D.D.C. 1988), addressed and rejected a similar assertion. In Cheng, the plaintiffs brought claims for negligence, breach of fiduciary duties, and fraud against their broker for failing to apprise himself of their financial situation, and engaging in unauthorized transactions on their account. Id. at 1225. The negligence claim was based on the defendant's alleged violation of the "suitability rule" promulgated in Article III, Section 2 of the NASD Rules of Fair Practice. Id. at 1227. The defendant contended that the plaintiffs had no private cause of action for violation of NASD rules. The court responded that, even if the NASD Rules did not provide a private cause of action, the negligence claim was nonetheless properly brought because "violation by [the defendant] of the rule will not automatically result in his being held liable for negligence; it would simply be a factor for consideration by the jury as to whether he acted as a 'reasonable' person in his conduct toward [the plaintiffs] and

11

their account . . . ." Id. at 1228; see also Javitch v. First Montauk Fin. Corp., 279 F. Supp. 2d 931, 938 (N.D. Ohio) (finding that, even if there is no private cause of action for violation of NASD or NYSE rules, "the standard [of practice] in the industry is reflected in the rules of both NASD and NYSE."); Miley v. Oppenheimer & Co., Inc., 637 F.2d 318, 333 (5th Cir. 1981)) (finding that "NYSE and NASD rules are excellent tools against which to assess in part the reasonableness or excessiveness of a broker's handling of an investor's account."). The Court finds the reasoning in Cheng to be applicable in this matter. While there may not be a private right of action for violation of Rule 2430, Plaintiffs are not suing merely for a violation of Rule 2430. Rather, they allege that Newbridge's failure to comply with the rule is evidence that they breached their duty of care, which includes a duty to act in accordance with the standard of care used by other professionals in the community. See DE 19 ¶¶ 47-48. Moreover, Newbridge cites no case law to the contrary. Thus, Newbridge's motion will be denied in this regard.

*ii. Sufficiency of the Pleadings*

Second, Newbridge asserts that the negligence claim is inadequately pleaded because it lacks sufficient factual basis under Iqbal. In this regard, the Court concurs. The allegations in Count III are essentially a series of conclusions supported by a very sparse set of factual claims. Plaintiffs' allegations in Count III can be summarized as follows: Newbridge owed Plaintiffs and putative Class Members a duty of reasonable care, and this duty includes an obligation to refrain from charging unreasonable fees or fees that unfairly discriminate among customers. Id. ¶¶ 47-48. Newbridge breached this duty by charging a handling fee that bore no relationship to the handling costs

incurred by Newbridge, and instead functioned as a "means to ensure a certain level of profitability for each of its branch locations." Id. ¶¶ 25, 49. Thus, Plaintiffs claim, the fees allowed Newbridge to collect a "second unauthorized commission" from customers. Id. ¶ 26.

However, the only factual bases that Plaintiffs allege for these conclusions are (1) the variance in fees, from $5.00 to $49.95, and (2) the fact that the State of Connecticut Department of Banking Securities and Investments Division undertook a regulatory action against Newbridge regarding the handling fees. See id. ¶¶ 22-27. The Court finds that these limited factual allegations, taken as true, are insufficient to support a plausible claim for relief. Accordingly, Count III will be dismissed without prejudice.

### D. Count IV: Conversion

In Count IV, Plaintiffs bring a claim for conversion, alleging that Newbridge wrongfully charged the handling fees, took specific and readily identifiable funds from Plaintiffs' accounts to satisfy payment of the fees, and continues to unlawfully retain those funds with an intent to do so permanently. See id. ¶¶ 53-55. Newbridge argues that this claim should be dismissed for two reasons. First, Newbridge asserts that a claim for conversion requires an unauthorized deprivation of property and that, in this case, Plaintiffs specifically agreed to pay the handling fees at issue. As noted above, however, Plaintiffs allege that the handling fees were not authorized because they were not charged at the then-prevailing rate for such fees. Newbridge has failed to effectively reply to this argument. Second, Newbridge contends that the claim is insufficiently pleaded. On this point, the Court agrees. Indeed, Count IV has the same

limited factual basis as Count III. Such allegations, combined with the threadbare recital of the elements of conversion, are inadequate to support a claim for relief. Accordingly, Claim IV will be dismissed without prejudice.

### IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant Newbridge Securities Corporation's Motion to Dismiss Amended Class Action Complaint [DE 28] is **GRANTED** as follows:

    a. Counts I, III, and IV are **DISMISSED without prejudice**.

    b. Count II is **DISMISSED with prejudice**.

2. Defendant Newbridge Securities Corporation's Motion for Temporary Stay of Discovery Requests Pending Determination of Defendant's Motion to Dismiss Plaintiffs' Amended Complaint [DE 40] is **DENIED as moot**.

3. By no later than **June 21, 2013**, Plaintiffs may file a Second Amended Complaint in accordance with the above findings. **Plaintiffs' failure to file a Second Amended Complaint by the June 21, 2013, deadline will result in the closing of this case.**

4. Defendants' Answer will be due 14 calendar days from the filing of a Second Amended Complaint.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 5th day of June, 2013.

*James I. Cohn*
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF.