IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 13-60384-CIV-COHN-SELTZER

RICHARD REMINGTON and URSULA
FINKEL, on their own behalf
and on behalf of those similarly situated,

    Plaintiffs,

v.                                                **CLASS ACTION**

NEWBRIDGE SECURITIES
CORPORATION,

    Defendant.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**

    Plaintiffs, RICHARD REMINGTON and URSULA FINKEL (collectively referred to as "Plaintiffs"), by and through undersigned counsel and pursuant to Local Rule 7.1, hereby file their Response in Opposition to Defendant, NEWBRIDGE SECURITIES CORPORATION'S ("Defendant" or "Newbridge"), Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (D.E. 55) ("Motion to Dismiss" or "MTD"), and state as follows:

**INTRODUCTION**

    Through its Second Amended Complaint (D.E. 54) ("SAC"), Plaintiffs detailed a scheme by which Newbridge violated its common law and contractual duties by charging its customers a per-trade "handling fee" that was both (1) unreasonable and (2) charged in an unfairly discriminatory manner. As alleged in the SAC, this handling fee – which reached as high as $59.95 per trade – was unreasonable in that it bore no reasonable relationship to the direct and actual "handling" costs that Newbridge incurred in processing these transactions – an amount

that never exceeded $10.50. (*E.g.*, D.E. 54, ¶¶ 2, 27, 35-38). This "handling fee" was also charged in an unfairly discriminatory manner, in that Newbridge charged different "handling fees" to different customers based solely on the location of the branch office that handled the transaction, without any consideration of what was being traded (or any other aspect of the trade, for that matter). (*E.g.*, *id.*, ¶¶ 2, 66-68).

These allegations are not new to Newbridge. At least three states (Connecticut, New Jersey, and Arkansas) and the Financial Industry Regulatory Authority ("FINRA") have successfully brought regulatory actions against Newbridge for the exact same conduct alleged in Plaintiffs' SAC. (*Id.*, ¶ 25). All four actions resulted in fines and/or restitution. (*Id.*) The FINRA action – in which Newbridge entered into its eighth Letter of Acceptance, Waiver and Consent ("AWC") with FINRA since 2003 – also forced Newbridge to finally agree to end its improper "handling fee" practices in early 2013. (*Id.*, ¶¶ 43-46 & Ex. F).

Based on these facts, Plaintiffs brought three causes of action in the SAC: breach of contract (Count I), negligence (Count II), and conversion (Count III). As set forth more fully below, each of these claims are properly pled and supported by more than ample allegations of fact. Yet, despite Plaintiffs having corrected each of the pleading deficiencies noted in this Court's order (D.E. 51) dismissing Plaintiffs' first amended complaint, Newbridge has once again moved to dismiss (D.E. 54). Its Motion to Dismiss is without merit, and must be denied.[1]

---

[1] The one exception is Newbridge's argument concerning Plaintiff Remington's (and only Plaintiff Remington's) breach of contract claim, which is explained further below.

-2-

## ARGUMENT

### I. PLAINTIFF FINKEL HAS PROPERLY AND SUFFICIENTLY STATED A CLAIM FOR BREACH OF CONTRACT (COUNT I).

In its Motion to Dismiss, Newbridge raises two arguments with regard to Count I. Newbridge unsuccessfully argues that Count I fails because Plaintiffs do not articulate an objective standard for the definition of the contractual phrase "then prevailing rate". (MTD, pp. 5-6). Newbridge also argues that Plaintiff Remington fails to state a claim for breach of contract because his customer agreement does not contain the "then prevailing rate" language upon which Plaintiffs' breach of contract claim is predicated. (MTD, pp. 4-5).

#### A. Plaintiffs clearly describe what the phrase "then prevailing rate" means and how Newbridge breached its contractual obligation to charge the "handling fee" at that rate.

In support of their claim for breach of contract, Plaintiffs allege that all of Newbridge's post-June 1, 2008 customer agreements contain a provision that requires Newbridge to charge commissions and fees (including the "handling fee" at issue) at the "then prevailing rate" (D.E. 54, ¶ 32 & Comp. Ex. D); that the phrase "then prevailing rate" creates an "objective standard, reflective of an average, reasonable amount charged in the industry" (*id.*, ¶ 33); that the reasonable amount charged in the industry equals the "amount of the direct and actual costs that were incurred by the brokerage firm on behalf of the customer in processing the transaction" (*id.*, ¶ 34); that Newbridge's direct and actual "handling" costs ranged between $8.00 and $10.50 per trade (*id.*, ¶ 54); that Newbridge thus breached its agreement to charge the "then prevailing rate" when it charged Plaintiff Remington upwards of $49.95 per trade (*id.*, ¶ 53), Finkel upwards of $29.95 per trade (*id.*, ¶ 54), and the other Class Members amounts that reached as high as $59.95 per trade (*id.*, ¶ 52); and that the Plaintiffs and the Class suffered damages (*id.*, ¶ 56).

Unquestionably, these allegations are more than sufficient to state a claim for breach of contract under Florida, New York, and Massachusetts law. *See generally, Int'l Star Registry of Illinois v. Omnipoint Mktg.*, LLC, 510 F. Supp. 2d 1015, 1022 (S.D. Fla. 2007) (enumerating elements of breach of contract: valid contract, breach, damages); *Terwilliger v. Terwilliger*, 206 F. 3d 240, 245-46 (2d Cir. 2000) (same); *Guckenberger v. Boston Univ.*, 974 F. Supp. 106, 150 (D. Mass 1997) (same). However, Newbridge still contends – erroneously – that "Plaintiffs do not allege anywhere in the SAC what the objective, average, reasonable amount charged in the industry for handling fees was at any point during the alleged class period." (MTD, p. 5). Plaintiffs make it explicitly clear in the general allegations and within Count I itself exactly what that amount was: "the broker dealer's direct and actual costs in processing a particular transaction" (D.E. 54, ¶ 51; *see also* ¶¶ 33, 34) – which, in this case, averaged between $8.00 and $10.50 per trade (*id.*, ¶ 54).

Newbridge's point of contention is that Plaintiffs are proposing a "subjective standard" rather than an "objective standard" because, as it argues, if the "then prevailing rate" is pegged to what the direct and actual costs are, then that rate "would be different for every brokerage firm, based on the amount charged by the particular brokerage firm's clearing broker." (MTD, p. 6). Newbridge's argument, however, is belied by the very definition of the word "objective". An objective standard is one that is "based on externally verifiable phenomena, as opposed to an individual's perceptions, feelings, or intentions." Black's Law Dictionary (9th ed. 2009) ("objective"). The amount charged to Newbridge by its clearinghouses is precisely that: a number that is externally verifiable. Plaintiffs did not pluck these numbers ($8.00 – $10.50) from thin air; they came directly from Newbridge. Perhaps Newbridge meant to say, not that Plaintiffs' standard was "subjective", but rather that it is capable of variance. But that does not

make Plaintiffs' definition any less "objective" or indicative of the reasonable standard in the industry.

Newbridge might disagree with Plaintiffs' interpretation of the "then prevailing rate" clause in the parties' customer agreements. But that has no bearing on whether Plaintiffs have adequately stated a claim upon which relief may be granted. "A determination of the proper interpretation of the contract should be decided at the summary judgment stage, not in a ruling on a motion to dismiss." *Managed Care Solutions, Inc. v. Cmty. Health Sys., Inc.*, 10-60170-CIV, 2011 WL 6024572 (S.D. Fla. 2011) (Moreno, C.J.) Where a plaintiff has "sufficiently alleged the required elements for claims of breach of contract," it is irrelevant that the parties differ in their interpretation of the contract. *Larach v. Standard Chartered Bank Intern. (Americas) Ltd.*, 724 F. Supp. 2d 1228, 1239 (S.D. Fla. 2010) (Moreno, C.J.) Here, Plaintiffs have alleged precisely what the definition is and how the provision was breached, and those allegations must be accepted as true. *See Caravello v. American Airlines, Inc.*, 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (on a motion to dismiss, "the court must accept the allegations of the complaint as true", must view the complaint "in the light most favorable to the plaintiff", and is limited to the "four corners of the complaint.") Accordingly, Newbridge's Motion to Dismiss Plaintiff Finkel's breach of contract claim must be denied.

    **B.    Plaintiff Remington will agree to dismiss his claim for breach of contract at this time, without prejudice.**

The other argument Newbridge raises is that Plaintiff Remington does not have an agreement with Newbridge that contains the "then prevailing rate" language upon which the breach of contract claim is predicated. (MTD, pp. 4-5). When Plaintiffs filed their SAC, they had a reasonable basis to believe that each time Newbridge updated its customer agreements, that the terms and conditions of those agreements were made applicable to all of its customers,

including those who executed agreements prior to June 1, 2008. However, just a day or so before Plaintiffs filed the SAC, Newbridge produced documents in response to Plaintiffs' initial document requests and no documents in that production reflect that Newbridge's new customer agreements were made operative to existing customers. Unfortunately, Plaintiffs and undersigned counsel were not able to fully review and analyze those documents before the SAC filing deadline. Accordingly, based on the limited discovery exchanged in this case thus far, Plaintiff Remington concedes that he cannot show a customer agreement applicable to him that contains the "then prevailing rate" language found in the post-June 1, 2008 customer agreements. He therefore agrees to dismissal of his claim for breach of contract, <u>without prejudice</u>. If Plaintiffs come to learn through further discovery that Newbridge did, in fact, impose its post-June 1, 2008 terms and conditions on Plaintiff Remington and customers who executed agreements prior to June 1, 2008, then Plaintiff Remington should be allowed to re-assert his breach of contract claim.

In the interim, simultaneous with the filing of this Response, Plaintiffs will file a motion for leave to amend their SAC to drop Plaintiff Remington's breach of contract claim. This proposed amendment will in no way affect Remington's claim for negligence (Count II) or conversion (Count III).

## II. PLAINTIFFS HAVE PROPERLY AND SUFFICIENTLY STATED A CLAIM FOR NEGLIGENCE (COUNT II).

Newbridge next maintains that Plaintiffs' claim for negligence (Count II) should also be dismissed. With a matter-of-fact tone that defies the very basis for FINRA's action against it, Newbridge somehow argues that Rule 2430 does not apply to its "handling fee." (MTD, p. 5). Newbridge goes on to assert that Plaintiffs failed to identify any industry standards with regard

to its "handling fees", and that Plaintiffs failed to explain how Newbridge breached that standard. (*Id.*) These arguments have no merit.

### A. Plaintiffs clearly describe the applicable standards of care in the industry, and explain exactly how Newbridge breached those standards.

The SAC is replete with allegations describing the applicable standards of care for broker-dealers such as Newbridge with regard to the imposition of "handling fees", and explains exactly how Newbridge breached those standards. For example, Plaintiffs alleged that at their core, the duties owed by Newbridge to Plaintiffs and the Class were to employ "fair dealing" (D.E. 54, ¶ 29, 58) and to act in the best interest of its Customers without regard to its own financial interests (*id.*, ¶ 58); that those duties required Newbridge's "handling fees" to be both reasonable in amount, and not applied in an unfairly discriminatory manner (*id.*, ¶ 30); that Rule 2430, which embodies those requirements, is one example of the standard of care in the industry (*id.*, ¶ 60); that FINRA (the largest self-regulatory agency for broker-dealers) has made it abundantly clear that marking up "handling fees" violates the standard of care in the industry and, specifically, NASD Rule 2430 (*id.*, ¶ 35 & Ex. F, pp. 3-4); that Newbridge breached its duty and the standard of care when it charged a "handling fee" that was grossly excessive and unreasonable to the extent that Newbridge's markup reached as high as 700% (*id.*, ¶ 64); that Newbridge breached its duty and the standard of care by charging different "handling fees" on otherwise identical transactions based solely on the office through which a customer traded, and not on any factors relevant to the actual transaction (*id.*, ¶ 66-68); and that as a direct and proximate result of these breaches of Newbridge's standards of care, Plaintiffs and the Class suffered damages (*id.*, ¶ 69).

To boil down what the SAC alleges quite thoroughly: Newbridge was not permitted to mark up its "handling fee" or to charge different customers different amounts (on otherwise

Case 0:13-cv-60384-JIC   Document 56   Entered on FLSD Docket 07/22/2013   Page 8 of 13

identical trades) based solely on geographic considerations. They had a common law duty to refrain from that conduct, and yet they breached that duty to Plaintiffs and the entire Class. Unquestionably, these allegations are more than sufficient to state a claim for negligence under Florida, New York, and Massachusetts law. *See generally, Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir. 2008) (enumerating elements of negligence claim: duty, breach, causation, damages); *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002) (same); *Magarian v. Hawkins*, 321 F.3d 235, 238 (1st Cir. 2003) (same). Newbridge's protestations to the contrary are simply wrong.

    **B.**    **Rule 2430 does apply to the "handling fees" charged by Newbridge, and in any event, the interpretation of Rule 2430 would not be dispositive on the issue of Newbridge's duty.**

The most curious argument Newbridge raises in its Motion to Dismiss is that Plaintiffs do not state a claim for negligence because, as Newbridge argues, NASD Rule 2430 does not apply to the "handling fees" at issue. First and foremost, this stands in stark contrast to FINRA's findings that Newbridge accepted and consented to as part of the AWC, wherein FINRA found that Newbridge's unreasonable and unfairly discriminatory "handling fees" specifically "violated NASD Conduct Rule 2430." (D.E. 54, Ex. F, p. 4). In fact, NASD Rule 2430 was the first rule FINRA cited to as being violated by Newbridge. (*See id.*)

Despite that fact, Newbridge argues that NASD 2430 does not apply here by making reference to a Regulatory Notice that is attached to Plaintiff's SAC at Ex. C. (MTD, p. 7-8). Newbridge refers specifically to this text found on p. 11 of Ex. C: "NASD Rule 2430 requires that charges and fees for services must be reasonable and not unfairly discriminate among customers, and it applies to all charges and fees for services provided by a member firm that are not related to the execution of a transaction." (MTD, p. 8). Newbridge seizes on and

misconstrues the last clause which refers to fees "not related to the execution of the transaction" and concludes that the Rule is thus inapplicable. (*See id.*) It is wrong for three reasons.

First, FINRA itself unequivocally interprets Rule 2430 to apply to "handling fees" generally, and in particular, to the very "handling fees" at issue in this case. (D.E. 54, Ex. F). FINRA's interpretation of its own rule is certainly instructive and should be afforded great deference. *Cf. Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1337 (2013) (holding that "when an agency interprets its own regulation, the Court, as a general rule, defers to it unless that interpretation is plainly erroneous or inconsistent with the regulation.")

Second, the actual text of Rule 2430 does not even contain the "not related to the execution of the transaction" language that Newbridge relies on. (*Id.*, p. 3).[2] And third, Newbridge's interpretation of the plain language of the Rule is tortured. The title of the Rule is "Charges for Services Performed." (*Id.*) The rule speaks broadly about "Charges, if any, for services performed . . . shall be reasonable and not unfairly discriminatory." (*Id.*) The Rule uses the term "including" to indicate that miscellaneous services, such as the ones that Newbridge alludes to in its Motion to Dismiss, are also covered by the Rule. Contrary to Newbridge's position that the list of services is exhaustive or exclusive, the Rule's use of the term "including" suggests just the opposite: "The participle *including* typically indicates a partial list." *See* Black's Law Dictionary (9th ed. 2009) ("include"). The fact that the Rule also states that it applies to "other services" not specifically enumerated also reinforces that fact.

---

[2] NASD Rule 2430 provides that: "Charges, if any, for services performed, including miscellaneous services such as collection of moneys due for principal, dividends, or interest; exchange or transfer of securities; appraisals, safe-keeping or custody of securities, and other services, shall be reasonable and not unfairly discriminatory between customers." (*Id.*, p. 3). *See also* http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=3659 (accessed July 19, 2013)

Moreover, it bears emphasis that the interpretation of Rule 2430 is not dispositive on the issue of Newbridge's duty, and thus, is not dispositive on whether Newbridge acted negligently or whether Plaintiffs have properly stated a claim. As this Court correctly recognized in its prior Order (D.E. 51):

> Plaintiffs are not suing [Newbridge] merely for a violation of NASD Rule 2430. Rather, they allege that Newbridge's failure to comply with the rule is evidence that they breached their duty of care, which includes a duty to act in accordance with the standard of care used by other professionals in the community.

(D.E. 51, p. 12). Newbridge is essentially arguing that if NASD Rule 2430 does not apply, then Plaintiffs' negligence claim must fail. (MTD, p. 8). Newbridge misses the point: the NASD Rules do not create the common law standards of care. They may incorporate some of those standards in writing. A breach of a Rule might be evidence of a breach of the standard of care. But the Rules do not dictate them. And significantly, Newbridge does not cite any authority that suggests that Plaintiffs' articulation of the standard of care is not accurate, nor could they. Fair dealing – and common sense, really – dictates that a broker-dealer has a legal duty to charge fees that are reasonable and that do not unfairly discriminate between customers. That is what Plaintiffs have sufficiently alleged, and thus Newbridge's Motion to Dismiss Count II should be denied.

### III.   PLAINTIFFS HAVE PROPERLY AND SUFFICIENTLY STATED A CLAIM FOR CONVERSION (COUNT III).

Finally, Newbridge maintains that Plaintiffs' claim for conversion (Count III) should be dismissed because it is duplicative of Plaintiffs' breach of contract claim. Specifically, Newbridge states that "if the only wrongful conduct alleged constitutes a breach of contract, such wrongful conduct cannot be the basis of a conversion claim." (MTD, p. 9) (emphasis added).

Newbridge then offers the Court a full page of string cites in support of its contention. (MTD, p. 10).

Newbridge's argument misses the point. Plaintiffs agree with the proposition that the cases cited by Newbridge articulate, that is: a simple monetary debt generally cannot form the basis of a claim for conversion or civil theft. *See e.g., Gasparini v. Pordomingo,* 972 So.2d 1053, 1055 (Fla. 3d DCA 2008) ("It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft."). However, the general rule does not foreclose a claim for civil theft or conversion under certain circumstances where it is alleged that the defendants had an obligation to "to keep intact or deliver the specific money in question, so that money can be identified." *Id.* at 1056 (quoting *Futch v. Head,* 511 So.2d 314, 320 (Fla. 1st DCA 1987)); *see also Masvidal v. Ochoa,* 505 So.2d 555, 556 (Fla. 3d DCA 1987) (specifying that civil theft and conversion can be asserted where a party embezzles funds from an escrow account).

Here, it is alleged that Newbridge "has taken specific and readily identifiable funds from Plaintiffs' (and all Class Members') investment accounts to satisfy payment of [the handling] fees." (D.E. 54, ¶ 72). Thus, Plaintiffs have alleged an independent cause of action for conversion.

## CONCLUSION

For all the aforementioned reasons, this Court should deny Newbridge's Motion to Dismiss in its entirety, with the exception of Plaintiff Remington's breach of contract claim, which Plaintiffs seek leave to dismiss without prejudice through the filing of a third amended complaint.

Dated: July 22, 2013                         Respectfully submitted,

By:    *s/ Lyle E. Shapiro*
Lyle E. Shapiro (FBN: 0120324)
lshapiro@richmangreer.com
Manuel A. Garcia-Linares (FBN: 0985252)
mlinares@richmangreer.com
Eric M. Sodhi (FBN: 0583871)
esodhi@richmangreer.com
Joshua L. Spoont (FBN: 053263)
jspoont@richmangreer.com
RICHMAN GREER, P.A.
396 Alhambra Circle
North Tower, 14th Floor
Miami, Florida 33134
Telephone: (305) 373-4000
Facsimile: (305) 373-4099
*Attorneys for Richard Remington and Ursula Finkel, on their own behalf and on behalf of those similarly situated.*

## CERTIFICATE OF SERVICE

I HEREBY certify that on July 22, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:    s/ Lyle E. Shapiro

## SERVICE LIST
Richard Remington, et al. vs. Newbridge Securities Corporation
CASE NO. 13-60384-CIV-COHN-SELTZER
United States District Court, Southern District of Florida

| | |
|---|---|
| Lyle E. Shapiro<br>lshapiro@richmangreer.com<br>Manuel A. Garcia-Linares<br>mlinares@richmangreer.com<br>Eric M. Sodhi<br>esodhi@richmangreer.com<br>Joshua L. Spoont<br>jspoont@richmangreer.com<br>RICHMAN GREER, P.A.<br>396 Alhambra Circle, North Tower, 14th Floor<br>Miami, FL 33134<br>*Attorneys for Plaintiffs* | Randall C. Place, Esq.<br>Place and Hanley, PLLC<br>30 Town Square Blvd, Suite 202<br>Asheville, N.C. 28803<br>randall_place@placeandhanley.com<br>*Attorneys for Plaintiffs* |
| Darren Blum, Esq.<br>Blum Law Group<br>110 E. Broward Blvd.<br>Suite 1700<br>Ft. Lauderdale, FL 33301<br>blum@stockattorneys.com<br>*Attorneys for Plaintiffs* | Gregg J. Breitbart, Esq.<br>Kaufman Dolowich Voluck & Gonzo LLP<br>2101 N.W. Corporate Blvd., Suite 218<br>Boca Raton, FL 33431<br>gbreitbart@kdvglaw.com<br>*Attorneys for Defendant* |
| Dennis A. Nowak, Esq.<br>Rumberger, Kirk & Caldwell, P.A.<br>Brickell Biscayne Centre<br>Suite 3000<br>80 S.W. 8th Street<br>Miami, FL 33130<br>dnowak@rumberger.com<br>*Attorneys for Defendant* | |