UNTIED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-60384-CIV-COHN/SELTZER

RICHARD REMINGTON and URSULA
FINKEL, on their own behalf and on
behalf of those similarly situated,

       Plaintiffs,

v.

NEWBRIDGE SECURITIES
CORPORATION,

       Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon the Motion to Dismiss Second Amended

Class Action Complaint [DE 55], filed by Defendant Newbridge Securities Corporation

("Newbridge").  The Court has considered the motion, Plaintiffs' response [DE 56],

Newbridge's reply [DE 58], the record in this case, and is otherwise fully advised in the

premises.

### I. BACKGROUND

Newbridge is a securities broker-dealer, formed in 1997, and registered with the

Securities and Exchange Commission ("SEC"), Financial Industry Regulatory Authority

("FINRA"), New York Stock Exchange ("NYSE"), and the NASDAQ Stock Exchange

("NASDAQ").  DE 54 ¶ 10.  Over its history, Newbridge has worked with three different

clearinghouses in delivering its services to customers.  From its founding up to June 1,

2008, Newbridge used National Financial Services ("NFS").  From June 1, 2008 through

September 1, 2012, Newbridge worked with Legent Clearing, LLC ("Legent").  Since September 2, 2012, Newbridge has contracted with COR Clearing, LLC ("COR"). See DE 28 at 5 n.3.  During these time periods, Newbridge used slightly different forms for its customer agreements, each of which contained information regarding fees charged to customers.  See DE 54-4.

Plaintiffs Richard Remington and Ursula Finkel were customers of Newbridge. See DE 54 ¶¶ 1, 7-8.  They allege that Newbridge breached the customer agreements by charging an unauthorized handling fee to customers, including Plaintiffs and putative Class Members, each time Newbridge executed a trade on their behalf.  Id. ¶¶ 1-2, 27. Plaintiffs claim that the fee bore no reasonable relationship to actual handling costs, and was unfairly discriminatory because different branch offices charged different rates despite having incurring similar handling costs.  See id. ¶¶ 2, 27, 67.   The fee allegedly went as high as $59.95 per trade, even though Newbridge's actual handling costs never exceeded $10.50 per trade.  Id. ¶ 38, 67.  Plaintiffs assert that Newbridge used the fee as a second unauthorized commission that it charged to its customers.  Id. ¶ 28.

On January 8, 2013, Remington filed a class-action suit against Newbridge in the Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, bringing several state-law claims pertaining to the handling fee.  See DE 1-1.  Newbridge removed the action to this Court on February 19, 2013, alleging federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 78bb.  On February 16, 2013, Newbridge filed a Motion to Dismiss Class Action Complaint [DE 9] ("first motion to dismiss").  On April 1, 2013, Plaintiffs filed an Amended Class Action Complaint [DE 19] ("Amended Complaint"), adding Finkel as a Plaintiff and making several substantive

2

changes to the pleadings.  Accordingly, the Court denied the first motion to dismiss as moot.  <u>See</u> DE 21.  In the Amended Complaint, Plaintiffs brought the following four claims: (i) breach of contract, (ii) breach of the covenant of good faith and fair dealing, (iii) negligence, and (iv) conversion.  On April 18, 2013, Newbridge filed a Motion to Dismiss Amended Class Action Complaint [DE 28].  On June 5, 2013, the Court granted the Motion to Dismiss, dismissing Count II with prejudice and Counts I, III, and IV without prejudice.  On June 21, 2013, Plaintiffs filed their Second Amended Class Action Complaint [DE 54] ("SAC"), again bringing claims for breach of contract, negligence, and conversion.  In the instant motion, Newbridge moves to dismiss all three counts of the SAC for failure to state a claim.  Plaintiffs oppose the motion.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); and <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 555 (citations omitted).  "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  At this stage in the litigation, the Court must consider the factual allegations in the complaint as true, and accept all reasonable inferences therefrom.  <u>Jackson v. Okaloosa Cnty., Fla.</u>, 21 F.3d 1531, 1534 (11th Cir. 1994).  Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  <u>Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993).

Additionally, as the Court found in the Order Granting Defendant's Motion to Dismiss [DE 51]:

> Newbridge asserts, and Plaintiffs do not dispute, that this action is governed by New York and Massachusetts law.  The Legent and COR customers agreements provide that the agreements "and all transactions made in [the customer's] account" are governed by New York law [DE 28-1 at 15, 33], while the NFS agreement is governed by Massachusetts law [DE 28-1 at 11].

DE 51 at 4.  Once again, the parties do not dispute that New York and Massachusetts law control this action.  Thus, for the purpose of this motion, the Court will apply the laws of New York and Massachusetts, respectively.

### III. ANALYSIS

As noted above, Newbridge seeks to dismiss all three counts of the SAC for failure to state a claim for relief.  The Court will address the sufficiency of each count in turn.

### A. Count I: Breach of Contract

In Count I, Plaintiffs allege that Newbridge entered into customer agreements with Plaintiffs and putative Class Members that contained slightly varying terms over time.  However, since June 1, 2008, the agreements have provided that customers "agree to pay . . . commissions and fees at the then prevailing rate."  DE 54 ¶ 32; DE 54-4 at 5.  Plaintiffs assert that "the then prevailing rate" refers to "a broker-dealer's direct and actual costs in processing a particular transaction."  DE 54 ¶ 51.  Plaintiffs' further claim that Newbridge's direct and actual costs for handling Plaintiffs' transactions were between $8.00 and $10.50.  Id. ¶ 53.  Plaintiffs allege that Newbridge breached the customer agreements by charging amounts in excess of their direct costs – $49.95 per transaction to Remington, $29.95 per transaction to Finkel, and as high as $59.95 per transaction to Class Members.  Id. ¶¶ 52-54.  Newbridge moves to dismiss Count I as brought by both Remington and Finkel.

### 1. Remington's Claim

Newbridge asserts that Remington's breach of contract claim should be dismissed because his agreement did not contain the "then prevailing rate" language.  According to the SAC, Remington became a customer of Newbridge on May 2, 2008, while the "then prevailing rate" language was inserted into the customer agreements starting on June 1, 2008.  Id. ¶¶ 7, 32.  Plaintiffs respond that, based on the limited discovery exchanged in the case so far, they are unable to show that the pertinent language was applicable to pre-June 1, 2008 agreements.  Therefore, they concede that Remington cannot at this time show that Newbridge breached his customer agreement.  Accordingly, Remington's claim in Count I will be dismissed without

5

prejudice.

*2. Finkel's Claim*

Newbridge contends that Finkel's claim should be dismissed because she fails to

allege  an objective standard by which to measure the then prevailing rate for a

handling fee.  In the Court's Order dismissing the First Amended Complaint, the Court

held that "the term 'then prevailing rate' creates an objective standard, reflective of an

average, reasonable amount charged in the industry."  DE 51 at 8.  Newbridge asserts

that the SAC fails to allege what the objective, average amount charged in the industry

for handling fees was during the putative class period.  Newbridge argues that, if "the

then prevailing rate" refers to each individual broker-dealer's direct and actual costs,

then that amount will vary from broker to broker, thus creating an entirely subjective

standard.  Plaintiffs respond that, while their interpretation of "then prevailing rate"

creates a *variable* standard, it is nonetheless an *objective* standard – one that is "based

on externally verifiable phenomena, as opposed to an individual's perceptions, feelings,

or intents."  DE 56 at 4 (citing Black's Law Dictionary 1178 (9th ed. 2009) (defining

"objective")).  Newbridge replies that Plaintiffs have failed to cite any industry-wide

standard for the rates of handling fees, and are attempting to sidestep this deficiency by

"substitut[ing] their own concocted definition for an industry-wide standard for 'then

prevailing rate.'"  DE 58 at 6.

Newbridge's reply gets to the heart of the matter.  Plaintiffs have offered an

interpretation of the "then prevailing rate" as referring to "a broker-dealer's direct and

actual costs in processing a particular transaction."  Plaintiffs assert that an average,

reasonable rate of handling fees in the brokerage industry is one that correlates to a

6

firm's direct and actual handling costs.  Newbridge responds that Plaintiffs'

interpretation "is a pure fiction," and not supported by industry statistics.  Thus, it

appears that this is essentially a dispute as to the interpretation of the term "then

prevailing rate."  Issues of contract interpretation are generally not ripe on a motion to

dismiss.  Rather, such questions should be decided at the summary judgment stage,

when the parties are able to present a more developed factual record.  See, e.g.,

Managed Care Solutions, Inc. v. Cmty. Health Sys., No. 10-60170-CIV-MORENO, 2011

U.S. Dist. LEXIS 138968, at *17-18 (S.D. Fla. Dec. 2, 2011) ("The contract section in

dispute is reasonably susceptible to more than one interpretation, and thus this issue

should be decided at the summary judgment stage"); Moran v. Crystal Beach Capital,

LLC, No. 8:10-1037-T-30AEP, 2011 U.S. Dist. LEXIS 569, at *11-12 (M.D. Fla. Jan. 4,

2011) ("The Court may not engage in contract interpretation at the motion to dismiss

stage.  These arguments are more appropriate for summary judgment.").   Accordingly,

the motion will be denied as to Finkel's Count I.  Newbridge may renew this argument

on a motion for summary judgment.

### B. Count II: Negligence

In Count II, Plaintiffs allege that Newbridge negligently breached its duty to act

in the best interests of its customers, including Plaintiffs and putative Class Members,

by charging an excessive handling fee.  See DE 54 ¶¶ 58, 61.  Plaintiffs claim that the

standard of care for broker-dealers such as Newbridge with regard to the imposition of

fees is governed in part by FINRA Rule 2430, Charges for Services Performed.  See id.

¶¶ 59-60.  Rule 2430 provides that "Charges, if any, for services performed, including

miscellaneous services such as collection of moneys due for principal, dividends, or

7

interest; exchange or transfer of securities; appraisals, safe-keeping, or custody of securities, and other services, shall be reasonable and not unfairly discriminatory between customers."  FINRA Rule 2430.  Plaintiffs claim that Newbridge violated Rule 2430 by charging excessive, variable, and arbitrary fees, and by charging different fees to customers who traded through different branch offices.  DE 54 ¶ 61.  Therefore, Plaintiffs allege that Newbridge breached its duty of care to Plaintiffs and putative Class Members, and caused them damage.  In the present motion, Newbridge argues that Count II should be dismissed for two reasons.

### *i. Rule 2430 as the Standard of Care*

First, Newbridge argues that the standard of care in Rule 2430 does not apply to handling fees.  According to FINRA Regulatory Notice 13-07 [DE 54-3], attached as Exhibit C to the SAC,

> NASD Rule 2430 requires that charges and fees for services must be reasonable and not unfairly discriminate among customers, and it applies to all charges and fees for services provided by a member firm *that are not related to the execution of a transaction*.

DE 54-3 at 12 (emphasis added).  Thus, because the handling fees at issue were directly related to the execution of transactions, Newbridge argues that they are excluded from the scope of Rule 2430.  Newbridge further notes that the Regulatory Notice contains a non-exclusive list of fees that are covered by the rule – fees related to "setting up a new account, research, customer portfolio analysis, tax advise and calculation of required minimum distribution" – and handling fees are not mentioned in the list.  See id.  Plaintiffs respond that, not only does Rule 2430 apply to handling fees, but FINRA has applied Rule 2430 to the very handling fees at issue in this case.

Plaintiff has attached a FINRA Letter of Acceptance, Waiver, and Consent, No. 20120320484 ("AWC"), as Exhibit F to the SAC, in which FINRA found that Newbridge violated Rule 2430 by charging handling fees that "[were] not directly related to any specific handling services performed by [Newbridge] in processing the transaction." DE 54-6 at 5.

In deciding this argument, the Court need not interpret the precise scope of Rule 2430.  While the Regulatory Notice states that the rule is only applicable to fees unrelated to the execution of transactions, FINRA has actually applied the rule to the handling fees at issue.  Moreover, the language of the rule does not limit its application to fees unrelated to the execution of transactions.  Indeed, by its terms, it applies to "[c]harges, if any, for services performed."  FINRA Rule 2430.  Thus, regardless of whether Rule 2430 applies to handling fees generally, it does apply to *these* handling fees.  Cf. Decker v. Nw. Envtl. Def. Ctr., 133 S. Ct. 1326, 1337 (2013) (holding that "[w]hen an agency interprets its own regulation, the Court, as a general rule, defers to it unless that interpretation is plainly erroneous or inconsistent with the regulation.") (internal quotations and citations omitted).

### ii. Allegations of Unfair Discrimination

Second, Newbridge asserts that Plaintiffs have not alleged any facts supporting their contention that the fees unfairly discriminate among customers.  Newbridge argues that, while the fees may have varied from one office to another, Plaintiffs have not explained how such variance was unfair.  Upon review of the SAC, this argument is without merit.  Plaintiffs allege that Newbridge charged different levels of handling fees to different customers based solely on the branch office that handled the transaction,

9

rather than on handling costs incurred.  DE 54 ¶ 66.  In support of this allegation,

Plaintiffs claim that

> For example, on an otherwise identical transaction, Newbridge charged a
> Customer trading through its Woodbury, NY branch office a $49.95
> "handling fee", as opposed to a $39.95 "handling fee" for a Customer
> trading through Newbridge's Miami, FL branch office.  Yet, Newbridge's
> direct and actual costs in processing these transactions never exceeded
> $10.50, irrespective of the branch office that handled the transaction.

Id. ¶ 67.  Thus, Plaintiffs have alleged that the variance between the fees was unfairly

discriminatory because it was not based on costs incurred, but rather on the whim of

the office handling the fee.  Accordingly, the Court finds that Plaintiffs have adequately

supported their allegation concerning the discriminatory nature of the fees, and so the

motion will be denied as to Count II.[1]

### C. Count III: Conversion

In Count III, Plaintiffs bring a claim for conversion, alleging that Newbridge

wrongfully charged the handling fees, took specific and readily identifiable funds from

Plaintiffs' accounts to satisfy payment of the fees, and continues to unlawfully retain

those funds with an intent to do so permanently.  See id. ¶¶ 71-73.  Newbridge moves

to dismiss Count III on the ground that it is duplicative of the breach of contract claim in

Count I.

New York law provides that "a claim to recover damages for conversion cannot

be predicated on a mere breach of contract."  Wolf v. Nat'l Council of Young Israel, 694.

---

[1] In its Reply memorandum, Newbridge also moves to dismiss Count II as
duplicative of Count I.  Pursuant to Local Rule 7.1(c), "reply [memoranda] shall be
strictly limited to rebuttal of matters raised in the memorandum in opposition . . . ."  As
the issue was not raised in either the original motion or Plaintiffs' memorandum in
opposition, the Court will not consider the argument at this time.

N.Y.S. 2d 424, 425 (N.Y. App. Div. 1999); see also Auto. Coverage, Inc. v. Am. Int'l Grp., Inc., 839 N.Y.S. 2d 916, 917 (N.Y. App. Div. 2007) (finding that "[t]he conversion cause of action, although properly setting forth the elements of that tort, was properly dismissed as merely seeking damages for breach of contract.") (internal citations omitted).  Similarly, in Massachusetts, a plaintiff may not recover under both breach of contract and conversion for the same damages.  See Ferola v. Allstate Life Ins. Co., No. 05-0996, 2007 Mass. Super. LEXIS 363, at *26-27 (Mass. Super. Aug. 30, 2007); see also Szalla v. Locke, 421 Mass. 448, 454 (1995) ("Even if the wrongdoing occurred at different times during the parties' relationship, the damages incurred by the plaintiff were the same.  The plaintiff must elect from among the counts.").  Here, the only factual distinction between the claims is that, in the breach of contract claim, Plaintiffs allege that Newbridge charged the unreasonable fees, while the conversion claim asserts that Newbridge took money from Plaintiffs' accounts to satisfy those charges. Compare DE 54 ¶¶ 52-53 with DE 54 ¶¶ 71-72.  However, in both claims, the damages would be the same: the amount of money in handling fees that Newbridge withdrew from Plaintiffs' accounts, beyond that amount authorized by the customer agreements.

Plaintiffs cite to Florida case law for the proposition that a plaintiff may bring claims for both breach of contract and conversion where the defendant had an obligation "to keep intact or deliver the specific money in question, so that it can be identified."  DE 56 at 11 (citing Gasparini v. Pordomingo, 972 So. 2d 1053, 1055-56 (Fla. 3d DCA 2008); Masvidal v. Ochoa, 505 So. 2d 555, 556 (Fla. 3d DCA 1987)). However, Plaintiffs cite no case law from New York or Massachusetts, nor do they dispute that New York and Massachusetts law govern this action.  Moreover, Plaintiffs

11

fail to show how the conversion claim would provide recovery for anything other than the breach of contract.  Accordingly, the motion will be granted as to Count III.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Newbridge's Motion to Dismiss Second Amended Class Action Complaint [DE 55] is **GRANTED in part and DENIED in part** as follows:

1.     As to the claim brought by Plaintiff Richard Remington in Count I, the motion is **GRANTED**, and the claim is **DISMISSED without prejudice**;

2.     As to the claim brought by Plaintiff Ursula Finkel in Count I, the motion is **DENIED**;

3.     As to Count II, the motion is **DENIED**;

4.     As to Count III, the motion is **GRANTED**, and Count III is **DISMISSED with prejudice**; and

5.     Newbridge shall file its Answer and Affirmative Defenses to Counts I and II by no later than **August 30, 2013**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 20th day of August, 2013.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF.

12