**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**FT. LAUDERDALE DIVISION**

**CASE NO. 13-CV-60384-COHN-SELTZER**

RICHARD REMINGTON and URSULA
FINKEL, on their own behalf and on behalf
of those similarly situated,

       Plaintiffs,

vs.

NEWBRIDGE SECURITIES CORPORATION,

       Defendant.

_____/

**NEWBRIDGE'S MOTION *IN LIMINE***
**TO EXCLUDE TESTIMONY FROM PLAINTIFFS' EXPERT,**
**<u>GENE E. CARASICK, ESQ.</u>**

Defendant, Newbridge Securities Corporation pursuant to this Court's April 25, 2013 Scheduling Order (D.E. 38), seeks entry of an order to exclude the testimony of Gene E. Carasick, Esq., as his opinions are (1) unsupported by any facts/evidence in  this case, and therefore constitute impermissible *ipse dixit* or "net" opinions; and (2) constitute pure legal conclusions that usurp the function of the trier of fact.  Newbridge further states as follows:

**I.**    <u>**Introduction.**</u>

The Court and both parties agree that this lawsuit boils down to "a dispute as to the interpretation of the term 'then prevailing rate'" in the contract between Plaintiff Ursula Finkel and Newbridge.  Plaintiffs' main liability theories against Newbridge hinge on their ability to demonstrate that (1) the "then prevailing rate" clause is a reference to an industry standard regarding handling fees, and (2) that standard is violated when a broker/dealer such as

Newbridge charges more than its "direct and actual transaction costs," as charged by its clearing broker (Legent, in Newbridge's case).

Plaintiffs therefore assert that any handling fee exceeding the "direct and actual processing costs" constitutes a breach of contract and is also, by definition, "unreasonable" (negligence). The only "evidence" Plaintiffs have to support this theory, however, is the opinion testimony of their purported expert, Gene Carasick, Esq. But while he cites to a supposed standard in the securities industry to support his position that handling fees can only encompass direct/actual costs (and nothing more), he must admit that he has no evidence of this standard, save his own peculiar interpretation of a FINRA conduct rule (Rule 2430, which simply states that all commissions and fees must be "reasonable").

Because Mr. Carasick's opinion that an industry standard regarding handling fees exists is wholly unsupported by any facts or record evidence, his opinion is an impermissible *ipse dixit* or "net" opinion statement, and must not be allowed. *See, e.g., General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Additionally, Mr. Carasick's conclusion — that the word "reasonable" in FINRA Conduct Rule 2430 means that anything above direct/actual costs is *per se* unreasonable — is likewise impermissible as a legal conclusion. *See, e.g., Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (finding "the court must be the jury's only source of law"). Accordingly, Newbridge moves the Court to exclude the opinions of Mr. Carasick in this matter, pursuant to Rule 702, along with *Daubert* and its progeny.

In Plaintiffs' Reply Brief in Support of Their Motion for Class Certification and to Appoint Class Counsel, and Incorporated Memorandum of Law (D.E. 78) ("Plaintiffs' Reply"), Plaintiffs predicted that the time would come for Newbridge to explain "how Plaintiffs' expert (a former 18-year NASD/FINRA enforcement attorney) does not know what he is talking about." *Id.* at 2. That time is now.[1]

## II.   Summary of Mr. Carasick's stated expert report opinions and his admissions regarding those opinions.

In his report, Mr. Carasick opines that the only viable interpretation of the phrase "then prevailing rate" is "Newbridge's direct and actual processing costs, as determined by the rate Newbridge is charged by its clearing firm." *See* Carasick Report, attached as Exhibit A, at 7. He further opines that "Newbridge was contractually obligated to charge its customers a handling fee in accordance with the prevailing rate in the securities industry." *See id.*

His report does not provide any details, however, about the specifics of this supposed industry standard. Rather, his only cited support for his opinion is (1) his "35 years on the regulatory side of the securities business," and (2) the fact he "reviewed the customer agreements from literally hundreds of firms in connection with potential disciplinary action." *See id.*

During his deposition, however, Mr. Carasick admitted that he has <u>absolutely no evidence</u> to support that such an industry standard exists. Rather, regarding the "hundreds" of customer agreements he reviewed while employed at FINRA, he could not remember the language used in any of those agreements regarding handling fees. In fact, none of the

---

[1] In their Motion for Class Certification, Plaintiffs mentioned their expert, but did not attach a copy of his report, likely so that Newbridge could not attack it in its response. However, Plaintiffs did attach a copy of Mr. Carasick's report to support Plaintiffs' Reply. As set forth below, however, that report should not be considered in connection with class certification or any other issue in this case.

enforcement actions he was ever involved in concerned handling fees.  *See* 10/23/13 Deposition of Gene Carasick, attached as Exhibit B, at 40:21-41:19:

> Q:      [T]hat's not something you ever dealt with in your career at FINRA?
>
> A:      Handling fees directly?  No.
>
> * * *
>
> Q:      So in your 18-year career with FINRA, did you ever come across an introducing broker that charged a handling fee?
>
> A:      Sure.
>
> Q:      Did you ever bring an enforcement action against them as a result of that?
>
> A:      No.

Further, Mr. Carasick could not testify as to whether or how much direct/actual processing costs of clearing brokers (such as NFS or Legent) varied depending on the clearing broker used.  *See id.* at  56:5-11 ("Q:  Have you ever seen customer agreements in which Legent was the clearing firm?  A:  Possibly.  But I don't recall.  Q:  So you wouldn't be able to tell from your memory what those introducing brokers for those customers were doing with regard to handling fees?  A:  No.")  Thus, Mr. Carasick must admit that he has no knowledge what other introducing broker/dealers — in the same position as Newbridge — do with regard to the handling fees they charge, how much they charge, or what factors go into those charges:

> Q:      Do you know whether introducing firms like Newbridge during that same period that we're talking about here charged handling fees in excess of the direct and actual costs that they were charged by their clearing broker?
>
> A:      Well, at least those five firms that were cited by FINRA.
>
> Q:      Any others that you know of?

A:      Not that I know of, no.

Q:      You don't know whether they do or whether they don't?

A:      Well, I know that's what FINRA found.

Q:      The world of introducing brokers, the universe of introducing brokers, not just the five that were sanctioned by FINRA and not just Newbridge, but the other introducing brokers in the world, do you know if any of them charge handling fees in excess of the direct and actual costs that they are charged by [the clearing brokers]?

A:      <u>I don't know</u>.

*See id.* at 49:3-25 (emphasis added).  He did admit, though, that introducing brokers like Newbridge can, and do, incur administrative costs regarding the services they provide, above and beyond the direct and actual processing costs passed on to them by the clearing broker, such as operational, compliance, technology, and accounting expenses and could include such charges as part of a handling fee. *See id.* at 36:3-15:

Q:      So is it your opinion that if an introducing broker charges any amount of handling fee above its actual and direct costs that it is in violation of Rule 2430?

A:      Yes.

Q:      Not a penny more?

A:      If they could justify some other handling cost on top of the clearing charge – if they could demonstrate that there was some other cost and could show the specific amount of that cost and what it was based on, yeah.  It still is their cost.  But it's not necessarily just the clearing charge.

        They may have additional expenses.  I don't know.

Additionally, Mr. Carasick could not identify a single disciplinary action while he was at FINRA where FINRA found that an introducing broker's handling fee (or a similar fee) was

found to be "unreasonable" under NASD Conduct Rule 2430, for anything other than an improper disclosure issue. *See id.* at 40:21-41:22.

Putting the above all together, (1) Mr. Carasick has no relevant experience prosecuting cases involving handling fees; (2) he has no knowledge at all regarding what other introducing firms charge regarding such fees, or what factors go into such fees; and (3) he can point to no prior incident where FINRA ever found a handling fee to be unreasonable, outside the context of disclosure-related issues. Thus, the inescapable conclusion here is the very one that is reached by Newbridge's expert, David Paulukaitis: there exists no industry standard for handling fees. Rather, "the manner in which broker/dealers calculate handling fees vary wildly. Some assess a uniform flat fee, some assess a flat fee based on the clearing charge associated with the transaction, some assess a flat fee using a mathematical calculation that considers a variety of factors, and some charge no fees at all." *See* Declaration of Newbridge expert David Paulukaitis, attached as Exhibit C hereto. "The transaction-related fees charged by broker/dealers are as widely varied as the names used to describe those fees." *See id.* (explaining that "some of the common names for these fees that I have seen in the course of my career include 'postage and handling,' 'handling fee,' 'miscellaneous fee,' 'administrative fee,' and 'ticket charge'").

Thus, with no evidence of a purported industry standard regarding handling fees, Mr. Carasick is relegated to relying upon his own flawed interpretation of FINRA Conduct Rule 2430 to argue that the word "reasonable," as used in that rule, implies that in order for a fee to be reasonable, it must not exceed direct/actual processing costs (as passed on by clearing brokers such as Legent). *See* Carasick Depo, Ex. B, at 34:16-36:7. But as Mr. Carasick admits, Conduct Rule 2430 "does not specifically say" to introducing brokers that they should not "charge anything in excess of your own clearing charge." *Id.* at 35:1-5. Instead, Mr. Carasick is left with

CASE NO. 13-CV-60384-COHN-SELTZER

his own conclusion, based solely upon his reading of Rule 2430: the industry standard of "handling fees cannot be higher than direct/actual costs." *See id.* at 50:22-24 ("Well in this case [the industry standard] is imposed by a rule.").

Mr. Carasick cannot properly testify to an industry standard the existence of which he admits he has no evidence. And he cannot use his own legal interpretation of Rule 2430 as evidence of such an industry standard. His testimony is therefore precluded by Rule 702.

III.   **Mr. Carasick's opinion that an industry standard exists that handling fees cannot exceed direct and actual costs constitutes an impermissible "net opinion" or *ipse dixit* statement under Rule 702 and *Daubert.***

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Under it, witnesses qualified as experts by "knowledge, skill, experience, training, or education" may offer opinions if (a) their scientific, technical or other specialized knowledge will help the jury understand the evidence; (b) they base their testimony on "sufficient facts or data"; (c) they use reliable principles and methods and (d) they reliably apply those principles and methods to the facts before them. *See* Fed. R. Evid. 702. District Courts, through an "exacting analysis", apply Rule 702 to ensure that "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Cobra Intern., Inc. v. BCNY Intern., Inc.*, Case No. 05-61225-CIV, 2013 WL 3938659 at *2 (S.D. Fla. July 30, 2013) (citations omitted); *see also U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). "The court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." *Corwin v. Walt Disney Co.,* 475 F.3d 1239, 1250 (11th Cir.2007). "The importance of *Daubert's* gatekeeping requirement cannot be overstated." *Rider v. Sandoz Pharm. Corp.,* 295 F.3d 1194 (11th Cir. 2002) ("Although making determinations of reliability may present a court with the difficult task of ruling on matters that are outside of its field of expertise, this is 'less

objectionable than dumping a barrage of scientific evidence on a jury, who would likely be less equipped than the judge to make reliability and relevance determinations.'")

The District Court's gatekeeping function requires that it "analyze not what the experts say, but what basis they have for saying it." *Daubert*, 43 F.3d at 1311.  Importantly, "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997) (emphasis added).

Here, the "data" that would support Mr. Carasick's opinion that an industry standard regarding handling fees exists is simply non-existent.  While he opines that the "then prevailing rate" for handling fees in the securities industry means direct/actual processing costs, he admittedly has no evidence to support his "net" opinion/*ipse dixit* statement.  He is aware of no prior FINRA action where handling fees were at issue.  In his "18 years" of prosecuting "over 400 enforcement actions" at FINRA, he cannot recall a single incident where handling fees were at issue.  He has no knowledge of what any other introducing broker/dealers charge regarding handling fees, or whether or to what extent those fees exceed direct/actual processing costs.  In short, his opinion is that introducing brokers may not charge as a handling fee more than their direct and actual cost solely because that is his opinion.  Thus, this is the quintessential example of an expert's proffered opinion spanning "too great an analytical gap" from the existing data. *See, e.g., Miller v. United States*, 287 Fed. Appx. 982 (3d Cir. 2008) (upholding district court's decision to not allow opinion testimony of expert, because the district court properly concluded that the expert's "testimony was not based on sufficient data, or that 'there was simply too great

8

an analytical gap between the data and the opinion proffered." (citing *General Electric v. Joyner, supra*).[2]

**IV.** **Mr. Carasick's opinion that the language of FINRA Conduct Rule 2430 *requires* that handling fees cannot exceed "direct/actual costs" is an impermissible legal opinion.**

While Rule 704 allows an expert's opinion to embrace an ultimate issue in a given case, "[i]n general, testimony about a legal conclusion, or the legal implications of evidence, is inadmissible" *In re Bank Atlantic Bancorp, Inc. Sec. Litig.*, 2010 WL 6397500 *12 (S. D. Fla. Aug. 18, 2010). "An expert may testify as to his opinion on an ultimate issue of fact. An expert may not, however, merely tell the jury what conclusion to reach. A witness also may not testify as to the legal implications of conduct; the court must be the jury's only source of law." *Id.*[3]

---

[2] *Accord, 405 Condo Associates, LLC v. Greenwich Ins. Co.*, 2012 WL 6700225, at *5 (S.D.N.Y. Dec. 26, 2012) (refusing to admit proffered expert testimony because the gap between the testimony and the relevant data "calls into doubt the reliability of his testimony, given the absence of a clear methodology or relevant data"); *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717 (3d Cir. 1994) (noting that for an expert to qualify under Rule 702, the expert must testify that the foundation of his opinion comes from a source "reasonably relied upon" by experts in his field. Absent this demonstration, the testimony lacks a reliable foundation on the "why's" and "wherefore's" necessary to qualify for consideration.

[3] Federal courts in virtually all circuits have agreed with this principle, and have employed the gatekeeping function to exclude expert opinions that constitute legal conclusions. *See, e.g., Berkeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006); *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-14 (D.C. Cir. 1997); *Snape-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 197-98 (5th Cir. 1996) (ruling that trial court properly excluded taxpayer's expert reports as containing nothing more than legal arguments concerning tax treatment of certain dividends); *Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994); *Aguilar v. Int'l Longshoremen's Union, Local #10*, 966 F.2d 443, 447 (9th Cir. 1992); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (finding "the court must be the jury's only source of law"); *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988) (holding it was reversible error to allow an expert witness who was an attorney to give his opinions on what was required to make consent to a search effective); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986) (finding inadmissible an expert's opinion concerning whether, under securities law, disclosure of a particular fact was required in the course of negotiating a transaction); *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir. 1977) (ruling that a securities lawyer, called as an

On this point, the Middle District of Florida's opinion in another relatively-recent securities lawsuit is instructive. In *U.S. Sec. & Exch. Comm'n v. Big Apple Consulting USA, Inc.*, 2011 WL 3753581 (M.D. Fla. August 25, 2011), the Middle District found that an expert's opinion that an entity was a broker/dealer under federal securities law constituted an impermissible legal conclusion. The *Big Apple* case turned on whether or not one of the defendants (Consulting USA) was acting as a "broker-dealer" pursuant to the Securities Act of 1933. To that point, Consulting USA's expert opined that "Consulting USA was not acting as a broker-dealer." *Id.* at *5.

The court explained that whether Defendants were liable under the Securities Act turned on whether they were brokers or dealers and whether they were required to comply with the registration requirements. *Id.* Thus, "Duncan's opinion that Defendants were not broker dealers . . . [is a] legal opinion that Defendants are not liable under [the Securities Act]." *Id.* The court reasoned these opinions would not assist the trier of fact because "they merely tell the jury what result to reach" and therefore excluded these opinions. *Id.*

Here, similarly, Mr. Carasick is arguing that the "industry standard" he believes exists is "imposed by a rule," FINRA Conduct Rule 2430. *See* Carasick Depo, Ex. B, at 50:21-24. And Newbridge's liability in this lawsuit turns upon whether or not this supposed industry standard of "handling fees cannot exceed direct/actual costs" exists in the first place. With admittedly no actual evidence of this "standard," Mr. Carasick suggests that Rule 2430 itself provides the

---

expert, could not testify as to the legal obligations created under a contract). These decisions are guided by the rationale that judges are the experts on conclusions of law and thus outside assistance is unnecessary on such matters. *See In re: Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 69 (S.D.N.Y. 2001) ("In our adversarial system, lawyers make arguments, judges write legal opinions—and there is no such thing as an expert opinion when it comes to interpreting a statute unless that opinion belongs to a court").

benchmark.  Thus, as in *Big Apple* above, Mr. Carasick is simply offering opinions that "merely tell the jury what result to reach."  In essence, he is stating the following:  "Even though FINRA Rule 2430 does not say so, because it has the word 'reasonable' in it the rule means that in order for handling fees to be permissible, they must not exceed direct and actual costs."  This is nothing more than telling the jury to trust his interpretation of Rule 2430, and that under his interpretation, Newbridge must be found liable.

This type of opinion testimony is flatly prohibited by the Eleventh Circuit and its district courts, along with federal courts across the country.  As <u>this</u> Court has consistently stated, "An expert may not . . . merely tell the jury what conclusion to reach.  A witness also may not testify as to the legal implications of conduct; the court must be the jury's only source of law." *In re Bank Atlantic Bancorp, Inc. Sec. Litig.*, 2010 WL 6397500 *12 (S. D. Fla. Aug. 18, 2010).

**V.     Conclusion.**

Mr. Carasick admittedly cannot testify — from either his experience or otherwise — as to any facts/evidence supporting that an industry standard regarding handling fees exists in the securities industry.  He is only left with his own interpretation of FINRA Conduct Rule 2430. His testimony is therefore impermissible and inadmissible under Rule 702 and *Daubert*.

WHEREFORE, for the foregoing reasons, Newbridge respectfully requests the district court enter an order to exclude the testimony of Gene E. Carasick, Esq.

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)

WE HEREBY CERTIFY that the undersigned has conferred with Plaintiffs' counsel regarding the issues raised in this Motion.  Plaintiffs oppose the relief sought herein.

Respectfully submitted,

/s/ *Dennis A. Nowak*
_____

Dennis A. Nowak
Florida Bar No.  328979
Email: dnowak@rumberger.com
Email:  docketingmiami@rumberger.com and
dnowaksecy@rumberger.com
RUMBERGER, KIRK & CALDWELL
A Professional Association
Brickell Bayview Centre, Suite 3000
80 S.W. 8th Street
Miami, Florida  33130-3037
Telephone:  (305) 358-5577
Telecopier:  (305) 371-7580

and

Gregg J. Breitbart
Fla. Bar No.  843415
Email:  gbreitbart@kdvglaw.com
KAUFMAN DOLOWICH VOLUCK & GONZO LLP
One Boca Place
2255 Glades Rd., Suite 300E
Boca Raton, Florida 33431
Telephone:  561.910.5650
Facsimile:  561.910.5652

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2013, a true and correct copy of the above and foregoing was served by electronically filing with the Clerk of Court using CM/ECF and on all counsel or parties of record on the attached Service List via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Dennis A. Nowak*
Dennis A. Nowak

## SERVICE LIST

Darren C. Blum, Esquire
Blum Law Group
blum@stockattorneys.com

Sara E. Hanley, Esquire
The Law Offices of Place and Hanley, PLLC
sara_hanley@placeandhanley.com

Randall C. Place, Esquire
The Law Offices of Place and Hanley, PLLC
randall_place@placeandhanley.com

Manuel A. Garcia-Linares, Esq.
Richman Greer, P.A.
mlinares@richmangreer.com
cvaldeon@richmangreer.com

Lyle E. Shapiro, Esquire
Richman Greer, P.A.
lshapiro@richmangreer.com
brodriguez@richmangreer.com

Eric M. Sodhi, Esq.
Richman Greer, P.A.
esodhi@richmangreer.com
mramirez@richmangreer.com

Joshua L. Spoont, Esq.
Richman Greer, P.A.
jspoont@richmangreer.com
mramirez@richmangreer.com

6273701_1.DOC