# Exhibit "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 13-60384-CIV-COHN/SELTZER

RICHARD REMINGTON and URSULA
FINKEL, on their own behalf and on
behalf of those similarly situated,

      Plaintiffs,

v.

NEWBRIDGE SECURITIES
CORPORATION,

      Defendant.

_____/

Expert's Report on behalf of Plaintiffs
Table of Contents

I.      Introduction and Summary of Findings (p. 2)

II.     Analysis

     A. Newbridge breached its duty and standard of care required of
         registered broker-dealers (p. 3)

     B. Newbridge violated its contractual obligation to charge customers a
         handling fee at the prevailing rate that was reflective of a reasonable
         amount charged in the securities industry (p. 6)

Appendix A: Document Review (p. 8)

Appendix B: Carasick Resume (p. 11)

Appendix C: Carasick Expert Witness Cases (p. 14)

1



I
**Introduction and Summary of Findings**

The undersigned has been retained by the Plaintiffs as a securities industry expert in the above-captioned matter, in which Defendant Newbridge Securities Corporation ("Newbridge") is charged with breach of contract and negligence for charging its customers excessive and discriminatory "handling" fees in connection with the execution of securities transactions.

**Expert Qualifications.** Upon graduation from Northwestern University School of Law in 1974, I joined the U.S. Securities and Exchange Commission ("SEC") in Washington, D.C. as a staff attorney in the Division of Market Regulation. After becoming Assistant Director, I supervised a staff of approximately 10 lawyers responsible for the review, approval and implementation of self-regulatory organization rules relating to the conduct of broker-dealers. During my tenure, I received the SEC's Supervisory Excellence Award.

I joined Johnston, Lemon & Co. Incorporated in 1982, a full service registered broker-dealer headquartered in Washington, D.C., as Senior Vice President, General Counsel and Director of Compliance, where I remained for eight years. At Johnston, Lemon, I was responsible for legal and compliance matters relating to virtually all aspects of the operations of the broker-dealer. As Director of Compliance, I had sole responsibility for the firm's supervisory system and written procedures (which I authored).

I joined the Enforcement Department of FINRA in 1990 in its Atlanta, Georgia district office and became Senior Regional Counsel. During my 18 years with FINRA's Enforcement Department, I successfully prosecuted over 400 cases against broker-dealers and associated persons involving virtually all aspects of FINRA and SEC rules and regulations.

In accordance with FRCP Rule 26, this report:

(1) Contains a complete statement of all opinions expressed and the reasons for them;
(2) Contains the facts and data to support the opinions expressed;
(3) Contains in Appendix A a list of the documents reviewed in connection with the opinions expressed herein, all of which are either exhibits to the Complaint or documents filed or served by the parties in this case;
(4) Contains my qualifications in Appendix B; and
(5) Contains in Appendix C a list of cases in which I have testified as an expert in the last four years.

My fee for serving as an expert in this case is $325 per hour plus expenses.

**Summary of Findings.** For the reasons set forth in this Report, it is my opinion that:

(1) Newbridge breached its duty and the standard of care owed by broker-dealers to its customers by charging unreasonable and discriminatory handling fees.

(2) Newbridge violated its contractual obligation to charge customers the prevailing rate that was reflective of a reasonable amount charged in the securities industry.

## II
## Analysis

### A.  Newbridge breached its duty and standard of care required of registered broker-dealers

Based on my document review, it appears that the salient facts in this case are largely undisputed. Newbridge has acknowledged that it charged its customers, in addition to a commission, a "handling" fee of up to $59.95 per transaction. It is undisputed that Newbridge's clearing firm (either National Financial Services, Legent Clearing, LLC or COR Clearing LLC during different time periods) charged it a specified dollar amount per transaction, in accordance with the clearing agreements then in effect. Newbridge's President, Robert Spitler, admitted in his testimony that Newbridge's "handling fee" was not attributable to any transaction-specific cost and always exceeded its direct and actual handling costs.

Newbridge's "handling" fee was not charged uniformly among its customers, even though its handling costs were fixed by its clearing firm. It is my understanding that Newbridge's clearing firm charge for handling did not vary and was the same irrespective of which Newbridge branch or registered representative generated a particular transaction. Nonetheless, the fee Newbridge charged its customers varied from office to office and from registered representative to registered representative, and was a matter of negotiation between Newbridge and each office or representative individually, as was the percentage split of the fee between Newbridge and its office or registered representative.

Therefore, customers in one Newbridge office would pay more than customers in another Newbridge office for identical transactions. Additionally, in one instance Newbridge customers were charged different handling fees by two Newbridge offices located in the same building. On some occasions, for example where a registered representative would move from one Newbridge office to another, customers may pay different handling fees within the same branch office because the registered representative would continue to charge the rate from his former office rather than the rate charged at the new office which may be different. As noted above, the amount of the fee was in excess of Newbridge's cost and, in reality, as found by FINRA, was additional transaction-based compensation for Newbridge and its offices and agents.

Because of the nature of the relationship between a broker-dealer and its customers, wherein a customer entrusts to the broker-dealer their funds and securities, broker-dealers are held to a very high standard of care, as evidenced by the myriad of federal, self-regulatory orgnization and state

rules and regulations governing their conduct that are designed to ensure fair dealing with customers. The major thrust of the securities laws is the protection of investors. It is axiomatic that the integrity of the industry is paramount and founded on fair dealings with customers and on full and fair disclosure by broker-dealers. Anything less violates a broker-dealers' standard of care.

The high standard of care and fair dealing required of broker-dealers in the securities industry is evidenced in FINRA's rules. **FINRA Rule 2010** contains the general standard of care required of broker-dealers. It requires FINRA member firms to conduct their business in accordance with "high standards of commercial honor and just and equitable principles of trade." In addition, broker-dealers are required to comply with all applicable rules and regulations, including **FINRA Rule 2430,** which requires that all customer charges and fees to customers for services must be reasonable and not unfairly discriminate between customers.

Newbridge violated the standard of care it owed to its customers and violated both Rules 2010 and 2430 by charging customers handling fees that were not directly related to any direct handling costs incurred by or services performed by the firm, and that were unfairly discriminatory among its customers. In addition, the nature of the charge was mischaracterized on customer trade confirmations as a handling fee, rather than a source of additional transaction-based remuneration (i.e. a commission). Further, the fee was unfairly discriminatory because the fee varied based only on the particular registered representative or office that handled the transaction, and not any factor that justified the result of one client paying a higher fee than another client.

In a recent disciplinary action brought by FINRA against Newbridge, FINRA found, in its order accepting Newbridge's settlement, that Newbridge's handling charge violated FINRA Rules 2010 and 2430:

> . . . . Although reflected on customer trade confirmations as a charge for "handling" the charge was not reasonably related to any direct handling-related services performed by the Firm, or handling related expenses incurred by the Firm, in processing the transaction, but rather, effectively was an additional commission. The characterization of the charge a being for "handling" was therefore inaccurate and improper.
>
> \*      \*      \*
>
> The particular dollar amount charged was not attributable to any specific cost or expense incurred by the Firm in executing the trade, or determined by any formula applicable to all customers. Rather, it was determined by the individual representative executing the order, who had discretion to set the dollar amount of the fee within a particular range set by the Firm. Moreover, the range authorized by the Firm varied from branch to branch; consequently, customers of different branches might be assessed substantially different amounts for "handling" on otherwise identical trades.

In connection with the settlement of the case, FINRA required Newbridge to take corrective action within 90 days: (1) to ensure that transaction-related compensation is properly identified as a commission, and not as a fee for postage, handling and the like; (2) to fully and accurately disclose any specific service or cost incurred through its clearinghouse or the processing of trades that is passed along to customers; and (3) to revise its supervisory procedures to ensure compliance with the foregoing.[1][2]

On September 7, 2011, FINRA issued a news release announcing disciplinary actions against five broker-dealers (not including Newbridge) for assessing improper handling fees to customers. In its release, FINRA stated, in relevant part:

> [FINRA] announced today that it has fined five broker-dealers for understating the amount of total commissions charged to customers in trade confirmations and on fee schedules by mischaracterizing a portion of the commission charges as fees for handling services. With respect to each of these firms the handling fees were designed to serve as a source of additional transaction based remuneration for the firm and thus was far in excess of the cost of the handling-related services the firms provided.
>
> .   .   .   Trade confirmations and fee schedules must clearly reflect commission charges, and firms cannot disguise commissions by improperly describing them as charges for ancillary services.   .   .   .
>
> The cases resulted from a targeted review of improper fees charged by broker-dealers in which FINRA found that the firms were routinely charging customers for handling fees that far exceeded the actual cost of the direct handling-related services the firms incurred in processing securities transactions.   .   .   .

FINRA fined the five firms amounts ranging from $60,000 to $300,000 and required them to take corrective action similar to that required in the Newbridge disciplinary action. FINRA also announced that it would "continue to look closely at any firms that engage in these practices".

---

[1] According to CRD, in addition to the FINRA disciplinary action, Newbridge has been subject to disciplinary action for its improper handling fees by the states of Florida, Connecticut, New Jersey and Arkansas.

[2] In addition to the FINRA action relating to Newbridge's handling fees described above, CRD discloses that Newbridge has been disciplined by FINRA six different times for misconduct relating to improper charges to its customers: (1) in July 2005 and October 2008, FINRA found that Newbridge failed to execute customer buy and sell orders at prices that were as favorable as possible under prevailing market conditions (Case Nos. CLG050103 and 2006006351401); (2) in November 2009, FINRA found that Newbridge bought and sold corporate bonds from and to customers at unfair prices (Case No. 2007007600801); (3) in January 2008 and again in March 2008, FINRA found that Newbridge charged its customers excessive markups and markdowns (Case No. E072003019507); and (4) in April 2007, FINRA found that Newbridge failed to obtain best execution for customer orders.

See also January 1, 2012 Letter from FINRA to all Executive Representatives and Chief Compliance Officers of all FINRA member firms announcing its annual regulation and examination priorities, in which FINRA states "under NASD Rule 2340, any miscellaneous charges must be reasonable and related to the services performed. In 2011, FINRA brought cases against several broker-dealers that charged such excessive fees in the form of postage and handling charges that were unrelated to actual costs, and we will continue to investigate firms that appear to be taking advantage of investors through fee schemes."

Thus, FINRA has made it clear that any fees or charges described as handling fees must be related to the Firm's direct and actual handling costs. Here, Newbridge's direct and actual handling costs were specified in its clearing agreements, yet Newbridge charged its customers handling fees in excess of its own charges, and in a discriminatory manner, depending on the office at which the customer account was carried or the registered representative who handled the account.

Newbridge's actions in this case violated the duty and standard of care it owed as a broker-dealer to its customers. When an individual opens a securities account with a broker-dealer, entrusting to that broker-dealer his or her funds and investments, a relationship is created and the customer has the right to expect that he or she will be treated in accordance with the standards of care required of broker-dealers. The customer has the right to be treated fairly and not be taken advantage of through improper practices, such as those committed by Newbridge in this case, i.e. excessive and discriminatory fees. And customers have the right to expect that broker-dealers comply with those rules that were designed to protect them from unscrupulous practices. Newbridge and its offices benefitted financially from Newbridge's misconduct to the financial detriment of its customers, and Newbridge should not be permitted to retain the benefit of those ill-gotten gains it received at the customers' expense. Newbridge breached its duty and standard of care by charging handling fees that were in excess of its direct transactional costs and by charging fees that were discriminatory among its customers.

**B. Newbridge violated its contractual obligation to charge customers a handling fee at the prevailing rate that was reflective of a reasonable amount charged in the securities industry**

The relevant Newbridge customer agreements contained the following language, in relevant part:

> 27. Fees and Charges. I understand that there are charges for commissions and fees for executing buy and sell orders and for other services provided under this agreement. **I agree to pay such commissions and fees at the then prevailing rate.** I acknowledge that the prevailing rate of commissions and fees may change and that change may occur without notice. . . . . [emphasis supplied]

The Court noted in its Order dismissing the First Amended Complaint that it appeared that "this is essentially a dispute as to the interpretation of the term "then prevailing rate". I agree. Based on my 35 years on the regulatory side of the securities business, including my tenure at FINRA during which

I reviewed the customer agreements from literally hundreds of firms in connection with potential disciplinary action, it is my opinion that the term "then prevailing rate" is subject to only one definition: Newbridge's direct and actual handling cost as determined by the rate Newbridge is charged by its clearing firm. It is further my opinion that this definition is exclusive to all others as any other definition allowing a higher fee would violate FINRA rules which govern the permissible activities of broker-dealers. Broker-dealers may not contract their way around FINRA rules relating to reasonable handling charges any more than they can contract their way around FINRA's suitability or other requirements. The term "prevailing" would relate to the fact that the rate may change from time to time, if and when the clearing agreement is amended. In my experience, this is the only reasonable definition of the phrase "prevailing rate" in the context of handling fees in the securities industry.

Newbridge was contractually obligated to charge its customers a handling fee in accordance with the prevailing rate in the securities industry. Its duty required that its fee not be excessive and that it reflected its actual and direct handling cost. It is undisputed that Newbridge charged its customers a handling fee within a range of $18.00 to $59.95 per trade, depending on the particular Newbridge office at which the account was carried or the registered representative who handled the account. It is also undisputed that Newbridge's actual handling cost was specified in its clearing agreements and the cost was lower than the amount charged to customers.

In light of these undisputed facts, it is my opinion that Newbridge charged a handling fee in excess of the prevailing rate in the securities industry and, in so doing breached its contract and legal obligations to its customers.

Respectfully submitted,

**Gene Eric Carasick**

**September 30, 2013**

# Appendix A

**Document Review**

The documents listed below were furnished by Plaintiff's Counsel and utilized in preparing this report:

1. Second Amended Complaint and Exhibits thereto

2. Deposition of Robert Spittler and Exhibits thereto

3. Deposition of Ursula Finkel and Exhibits thereto

4. Newbridge Reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Amended Class Action Complaint

5. Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Second Amended Complaint

6. Defendant's Motion to Dismiss Amended Class Action Complaint and Incorporated Memorandum of Law

7. COR Clearing Response to Subpoena Duces Tecum and Attachments thereto

8. Deposition of Richard Remington

9. Order Granting Defendant's Motion to Dismiss

10. Newbridge CRD Record

11. Newbridge Clearing Agreements

12. Various Newbridge OSJ Agreements

13. Various Newbridge Trade Confirmations

14. Various Newbridge Customer Agreements

15. Various Newbridge Account Statements

16. Newbridge Commission Schedules

17. Newbridge Independent Registered Representatives Agreements

18. Newbridge Profit and Loss Statements from 2008-2012

9

19. Newbridge Response to On-Site FINRA examination in 2010

20. Various Newbridge Emails

21. Analysis of Newbridge Handling Fee Charges by branch

22. Letter dated July 11, 2012 from Spittler to the New Jersey Bureau of Securities

23. Consent Orders for Various State Actions against Newbridge

24. Newbridge Document Entitled "Handling Fee Revenue by Month"

25. Document Entitled "Newbridge Securities OSJ Payroll OSJ Payroll Agreement

26. Newbridge Answers to Plaintiff Remington's First Set of Interrogatories

27. Plaintiff's Motion for Class Certification

28. Letter dated September 7, 2011, from FINRA to the Executive Representatives and Chief Compiance Officers of all FINRA Member Firms

# Appendix B

**Gene E. Carasick**

**Education**

Northwestern University School of Law
Chicago, Illinois
Juris Doctor 1974

University of Pittsburgh
Pittsburgh, Pennsylvania
Bachelor of Arts (Philosophy) 1971

**Professional Experience**

**GC Litigation Support, LLC
Marietta, Georgia
President/Owner**

GC Litigation Support provides litigation consulting services and expert witness testimony for sales practice cases arising under FINRA and SEC rules and regulations, in particular matters involving: allegations of fraudulent sales practices, fiduciary obligations of registered representatives and broker-dealers, churning/excessive trading; suitability determinations; and broker-dealer supervision issues.

**Financial Industry Regulatory Authority
Atlanta, Georgia
August 1990-December 2008
Senior Regional Counsel
Department of Enforcement**

Prosecuted over 400 FINRA disciplinary actions against broker-dealers and registered personnel relating to all aspects of sales practices, supervision, trading, and operations, among other things.

Participated in numerous FINRA broker-dealer compliance/supervision training and educational programs.

**Johnston, Lemon & Co. Incorporated
Washington, DC
February 1982-July 1990
Senior Vice President/General Counsel/Director of Compliance**

Responsible for all legal, supervision and compliance matters for a full-service regional broker-dealer with six offices and 125 registered representatives in the Washington D.C. area. Was registered as a general securities principal, municipal securities principal, options principal and financial and operations principal.

**United States Securities and Exchange Commission
Washington, DC
September 1974-February 1982**

**Assistant Director, Division of Market Regulation**

Began as a staff attorney and progressively rose to the level of Assistant Director in the Division of Market Regulation. Supervised a staff of 8-10 attorneys responsible for the review, approval and implementation of self-regulatory organization rules relating to the conduct of broker-dealers and their registered personnel. Received the SEC's Supervisory Excellence Award.

**Professional Associations**

Former Member of Pennsylvania and District of Columbia Bars
Former Member National Society of Compliance Professionals
Former Member New York Stock Exchange Board of Arbitrators
Former Vice Chairman, Phila. Stock Exchange Business Conduct Committee
Current Member FINRA Board of Arbitrators

# **Appendix C**

**Rule 26€ Disclosure of Cases in Which Expert Testimony Has Been Given**

In 2013, I testified as an expert witness for the Claimants In the Matter of Arbitration Between Judith S. Primak Trust u/a dtd 7/15/82, as amended and Judith S. Primak as Trustee, Claimants v. Raymond James and Associates, Inc., Respondent.

I have been retained as an expert for the Bureau of Securities Regulation of the State of New Hampshire In the Matter of Edward Jones & Co., L.P. (Case No. C-2012000002). I have submitted a report to the administrative hearing officer and will testify at the hearing scheduled for October 28, 2013.