UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60384-CIV-COHN/SELTZER

RICHARD REMINGTON and URSULA
FINKEL, on their own behalf and on behalf of
those similarly situated,

      Plaintiffs,

v.

NEWBRIDGE SECURITIES CORPORATION,

      Defendant.

_____/

**ORDER DENYING MOTION TO EXCLUDE, DENYING MOTION FOR
SUMMARY JUDGMENT, AND GRANTING LEAVE TO AMEND**

      **THIS CAUSE** is before the Court upon Newbridge's Motion *In Limine* to Exclude

Testimony from Plaintiffs' Expert, Gene E. Carasick, Esq. [DE 88] ("Motion to Exclude"),

Newbridge's Motion for Summary Judgment [DE 91] ("Motion for Summary Judgment"),

and Plaintiffs' Motion to Voluntarily Dismiss Plaintiff Remington's Claim, and for Leave

for Plaintiff Finkel to File Her Fourth Amended Complaint and Renewed Motion for

Class Certification [DE 93] ("Motion to Amend").  The Court has considered the Motions

and the submissions of the parties in connection therewith, and is otherwise advised in

the premises.  For the reasons set forth herein, the Court will deny the Motion to

Exclude, deny the Motion for Summary Judgment, and grant the Motion to Amend.

**I.  BACKGROUND**

      This action arises out of allegedly excessive fees charged by Defendant

Newbridge Securities Corp. ("Newbridge"), a securities broker-dealer.  Plaintiffs Richard

Remington and Ursula Finkel are former customers of Newbridge.  DE 86 ¶¶ 1, 7–10.

In 2008, Newbridge began to use a series of contracts with its customers which included a customer agreement template central to this action.  Id. ¶ 32; DE 86-4 at 4–6 ("Customer Agreement").  Section 27 of the Customer Agreement provides that Newbridge's customers shall pay commissions and fees at the "then prevailing rate."  DE 86-4 at 5.  Plaintiffs allege that Newbridge breached this provision of the Customer Agreement by charging excessive "handling fees" for processing transactions.  DE 86 ¶¶ 1–2, 27.  Plaintiffs claim that the handling fees, which were as high as $59.95 per trade, bore no reasonable relationship to actual processing costs, which never exceeded $10.50 per trade.  See id. ¶¶ 27, 37–38.  Instead, Plaintiffs contend that the handling fees were actually hidden commissions.  Id. ¶ 66.  Plaintiffs also allege that Newbridge unfairly discriminated among its customers by charging different handling fees across its branch offices without justification.  Id. ¶¶ 2, 68–69.

On January 8, 2013, Remington filed a class-action suit against Newbridge in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, bringing several state-law claims pertaining to the handling fees.  See DE 1.  Newbridge removed the action to this Court on February 19, 2013, alleging federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 78bb.  Id. at 2–5.  A series of amended pleadings and motions to dismiss followed, substantially narrowing the issues and adding Finkel as a plaintiff.  On August 5, 2013, the time for filing of amended pleadings established by the Court's Scheduling Order expired.  See DE 38.  The operative pleading—Plaintiffs' Third Amended Class Action Complaint—contains a breach-of-contract claim by both Plaintiffs and a negligence claim by Finkel.  DE 86 ¶¶ 48–71.

On November 12, 2013, however, the Court denied Plaintiffs' request for certification of their proposed class.  DE 89.  The Court found that Remington's contract claim was atypical of the class's claims, and that Finkel's negligence claim, to the extent premised on allegations of discrimination, was also atypical of the class's claims.  Id. at 6–9.  In response to the Court's denial of class certification, Plaintiffs filed the Motion to Amend, seeking leave to file a Fourth Amended Class Action Complaint and to file a Renewed Motion for Class Certification and to Appoint Class Counsel.  DE 93.  The Fourth Amended Class Action Complaint would drop Remington as a plaintiff entirely and remove all reference to discrimination from Finkel's negligence claim.  DE 93-1.

In the meantime, Newbridge has filed its Motion to Exclude and Motion for Summary Judgment.  Newbridge argues that the opinion of Gene Carasick, Plaintiffs' expert witness, has an insufficient basis in fact and constitutes an impermissible legal conclusion.  DE 88.  Without Carasick's testimony or any other proof of an industry standard dictating the permissible bounds of Newbridge's handling fees, Newbridge argues that Plaintiffs' breach-of-contract and negligence claims fail as a matter of law. DE 91.

The Court will first resolve Newbridge's Motion to Exclude, because the admissibility of Carasick's testimony will impact the Court's analysis of the Motion for Summary Judgment.  Similarly, the disposition of the Motion for Summary Judgment bears on Newbridge's argument that amendment of the pleadings should be denied, thus the Court will address the Motion to Amend last.

## II.   MOTION TO EXCLUDE

### A.  Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admission of expert

testimony.  See Fed. R. Evid. 702.[1]  In applying Rule 702, "district courts must act as

'gatekeepers' which admit expert testimony only if it is both reliable and relevant."  Rink

v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005) (citing Daubert v. Merrell Dow

Pharms., Inc., 509 U.S. 579, 589 (1993)).  "District courts are charged with this

gatekeeping function to ensure that speculative, unreliable expert testimony does not

reach the jury under the mantle of reliability that accompanies the appellation 'expert

testimony.'"  Id. (internal quotation marks omitted).  To meet this obligation, courts "must

engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify

competently regarding the matters he intends to address; (2) the methodology by which

the expert reaches his conclusions is sufficiently reliable . . . ; and (3) the testimony

assists the trier of fact, through the application of scientific, technical, or specialized

expertise, to understand the evidence or to determine a fact in issue."  Id. at 1291–92

(internal quotation marks omitted).  "The party offering the expert has the burden of

satisfying each of these three elements by a preponderance of the evidence."  Id.

at 1292.

---

[1] Under Rule 702, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

While <u>Daubert</u> mandates an "exacting analysis of the proffered expert's methodology, it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." <u>Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.</u>, 326 F.3d 1333, 1341 (11th Cir. 2003) (citation & internal quotation marks omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Daubert</u>, 509 U.S. at 596.  "Indeed, 'in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility.'" <u>Rosenfeld v. Oceania Cruises, Inc.</u>, 654 F.3d 1190, 1193 (11th Cir. 2011) (quoting <u>Hemmings v. Tidyman's Inc.</u>, 285 F.3d 1174, 1188 (9th Cir. 2002)), <u>reh'g denied</u>, 682 F.3d 1320 (11th Cir. 2012).

Even if proposed expert testimony is admissible under Rule 702, that evidence may be excluded if it is irrelevant or if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403; <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300, 1309–10 (11th Cir. 1999). Because "expert testimony may be assigned talismanic significance in the eyes of lay jurors," a district court "must take care to weigh the value of such evidence against its potential to mislead or confuse." <u>United States v. Frazier</u>, 387 F.3d 1244, 1263 (11th Cir. 2004) (en banc).

## B. <u>Discussion</u>

In its Motion to Exclude, Newbridge raises two arguments against the admissibility of the testimony of Gene Carasick, Plaintiffs' expert.  First, Newbridge argues that Carasick's opinions are unsupported by knowledge or evidence of relevant industry practices.  Second, Newbridge argues that Carasick's opinions on the

requirements of FINRA's rules are impermissible legal conclusions.  The Court

disagrees with each of Newbridge's assertions, and will deny the Motion to Exclude.

### 1.  Carasick's Opinions Have Adequate Support

Newbridge argues that Carasick's opinion regarding the existence of an industry

standard limiting the amount of allowable handling fees is unsupported by any relevant

expertise or facts.  In his Expert Report, Carasick writes that FINRA's Conduct

Rule 2430 imposes an industry standard requiring that all service fees charged by

broker-dealers be "reasonable."[2]  DE 88-1 at 4.  In the context of handling fees,

Carasick opines that the rule mandates that "any fees or charges described as handling

fees must be related to . . . direct and actual handling costs."  Id. at 6.  Newbridge,

however, contends that the Expert Report cites no basis for Carasick's opinion other

than "his own flawed interpretation of FINRA Conduct Rule 2430."  DE 88 at 6.

Because Carasick can point to "absolutely no evidence to support that such an industry

standard exists," id. at 3, Newbridge argues that his opinion lacks the necessary factual

foundation, and is therefore inadmissible.  Id. at 6.

As a preliminary matter, Carasick is qualified to testify as an expert witness on

regulation of the securities industry.  The advisory committee notes to Federal Rule of

_____

[2] The Financial Industry Regulatory Authority ("FINRA") is a non-profit
organization tasked with regulating the securities industry.  See generally FINRA, About
FINRA, http://www.finra.org/AboutFINRA/ (last visited Jan. 27, 2014).  FINRA's Conduct
Rule 2430 reads in its entirety:

> Charges, if any, for services performed, including miscellaneous services
> such as collection of moneys due for principal, dividends, or interest;
> exchange or transfer of securities; appraisals, safe-keeping or custody of
> securities, and other services, shall be reasonable and not unfairly
> discriminatory between customers.

FINRA Manual, NASD Conduct Rule 2430.

Evidence 702 contemplate that a witness may qualify as an expert "relying solely or primarily on experience."  Fed. R. Evid. 702, advisory committee's note on 2000 amendment.  An expert relying on his personal knowledge and experience—as opposed to scientific training or certifications—may testify as long as he may reliably apply his experience to assist the trier of fact.  Whelan v. Royal Caribbean Cruises, Ltd., No. 12-22481, 2013 U.S. Dist. LEXIS 147851, at *3–5 (S.D. Fla. Aug. 15, 2013) (citing Frazier, 387 F.3d at 1261).

Here, Carasick's experience provides a reliable basis for his proposed testimony.  Carasick has worked for approximately thirty-five years in regulation of the securities industry, including over twenty years as an attorney for regulatory bodies.  DE 88-1 at 12–13.  In his 18 years working at FINRA, Carasick prosecuted over 400 disciplinary actions relating to "virtually all aspects of FINRA and SEC rules and regulations." DE 88-1 at 2.  Newbridge's expert witness, David E. Paulukaitis, testified that he has the "highest regard for Mr. Carasick" and indeed referred Carasick to Plaintiffs on that basis.  DE 102-1 at 9:22–10:7.  Moreover, the realm of securities regulation is arcane and inaccessible even to many legal professionals not versed in the subject.  Carasick's proposed testimony would doubtless assist the jury in understanding the concepts and issues of this case.  See In re Blech Sec. Litig., No. 94-7696, 2003 U.S. Dist. LEXIS 4650, at *53–54, *56–57 (S.D.N.Y. Mar. 27, 2003) (allowing expert testimony regarding customs of securities industry to help "jury understand unfamiliar terms and concepts").

Newbridge nevertheless argues that Carasick possesses no "relevant" experience because he has not specifically prosecuted FINRA enforcement actions premised upon excessive handling fees.  DE 88 at 4–5.  The Court does not view

Carasick's lack of involvement with handling-fee cases as impacting the sufficiency of his expertise.  An expert may testify regarding narrow sub-topics within his broader expertise—notwithstanding a lack of specific experience with the narrower area—as long as his testimony would still assist a trier of fact.  <u>Whelan</u>, 2013 U.S. Dist. LEXIS 147851, at *3–4.  For example, in <u>Maiz v. Virani</u>, 253 F.3d 641 (11th Cir. 2001), the Eleventh Circuit upheld a district court's decision to allow an economic expert to testify on damages relating to real-estate fraud, though the expert had no specific real-estate experience.  The appellate court held that the issue of damages in the real-estate context was sufficiently within his broader expertise.  <u>Id.</u> at 665.  Similarly, this Court finds that the interpretation of Conduct Rule 2430 is sufficiently within Carasick's expertise to allow him to assist the jury on the topic.  Moreover, the court in <u>Maiz</u> held that questions about the expert's lack of specific knowledge regarding real-estate economics were more appropriately directed to whether he had developed a sufficient foundation for his testimony.  <u>Id.</u>  Here, too, Newbridge's argument that Carasick has "no knowledge" regarding applicable industry standards for handling fees is more appropriately considered a challenge to the foundation for his opinion, not his qualifications.  The Court therefore finds Carasick qualified to testify as an expert on regulation of the securities industry.  <u>See Whelan</u>, 2013 U.S. Dist. LEXIS 147851, at *3–5.

Turning to the basis for Carasick's testimony, the Court disagrees with Newbridge that his interpretation of Conduct Rule 2430 lacks a foundation.  Contrary to Newbridge's contention that Carasick "has no evidence" of his proposed standard, he has provided ample support for his opinion, including guidance from FINRA itself

regarding the interpretation of the rule.  For example, Carasick references a FINRA

letter stating that it had commenced actions against broker-dealers assessing "handling

charges that were unrelated to actual costs, and [would] continue to investigate firms

that appear to be taking advantage of investors through fee schemes."  DE 92-1 at 6

(quoting FINRA, 2012 Annual Letter 7 (Jan. 31, 2012)).  Carasick draws upon the

resolution of a disciplinary action in which FINRA determined that Newbridge's

characterization of charges as "handling fees," where the charges were "not attributable

to any specific cost or expense incurred by [Newbridge] in executing the trade" and "not

directly related to any specific handling services . . . or handling-related expenses,"

violated Conduct Rule 2430.  See id. at 4 (citing FINRA, Letter of Acceptance, Waiver

and Consent, No. 2012032048401, at 4 (Jan. 29, 2013)).  Carasick also cites to a press

release in which FINRA announced fines against five other broker-dealers after an

investigation of "handling fees that far exceeded the actual cost of the direct

handling-related services the firms incurred in processing securities transactions."  See

id. at 5 (quoting FINRA, News Release: FINRA Fines Five Broker Dealers for Improper

Handling Fees (Sept. 7, 2011), available at http://www.finra.org/Newsroom

/NewsReleases/2011/P124283).  Newbridge's argument that Carasick's interpretation of

Conduct Rule 2430 lacks a foundation is thus without merit.

Carasick may also reliably testify to the existence of an industry standard derived

from the requirements of Conduct Rule 2430.  FINRA's Conduct Rules "reflect the

standard to which all brokers are held."  SEC v. Badian, No. 06-2621, 2010 U.S. Dist.

LEXIS 123990, at *4–5 (S.D.N.Y. Nov. 19, 2010) (quoting Mihara v. Dean Witter & Co.,

619 F.2d 814, 824 (9th Cir. 1980)).  Reference to FINRA and NASD rules thus is an

accepted and oft-utilized means of establishing the applicable industry standard.  See

Vucinich v. Paine, Webber, Jackson & Curtis, Inc., 803 F.2d 454, 461 (9th Cir. 1986);

Whitaker v. Wells Fargo Advisors, LLC, No. 11-380, 2011 U.S. Dist. LEXIS 111938,

at *15 (E.D. Va. Sept. 28, 2011) (holding that defendant's compliance with FINRA

regulations precluded finding that defendant had violated "industry standards").

Because FINRA rules may form the basis for an expert's testimony regarding industry

standards, the Court rejects Newbridge's contention that Carasick's "opinion that an

industry standard regarding handling fees exists is wholly unsupported," DE 88 at 2.[3]

### 2. Carasick's Interpretation of Conduct Rule 2430 Is Not an Impermissible Legal Conclusion

Newbridge also takes the position that Carasick's interpretation of Conduct

Rule 2430 is inadmissible because it is a legal conclusion.  An expert witness may not

offer legal conclusions; only the Court may instruct the jury as to the state of the law.

Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990).

Newbridge argues that Carasick's testimony regarding FINRA's rules is akin to an

expert witness impermissibly testifying to a broker-dealer's legal duties.  DE 88 at 10–11

(citing SEC v. Big Apple Consulting USA, Inc., No. 09-1963, 2011 U.S. Dist. LEXIS

95292 (M.D. Fla. Aug. 25, 2011)).  FINRA's rules, however, are not law, but rather the

rules of a private organization, thus an expert's interpretation of the rules does not

encroach upon the Court's domain.  See Vucinich, 803 F.2d at 461 ("Not being civil law,

these [NASD] rules were proper matters for expert testimony."); United States v.

---

[3] Newbridge also disagrees with the substance of Carasick's conclusion as to the applicable industry standard.  DE 88 at 6.  Disagreement over an expert's conclusions, however, is properly addressed through cross-examination and the presentation of contrary evidence, and does not go to the admissibility of the expert's testimony.  Quiet Tech. DC-8, Inc., 326 F.3d at 1345.

<u>Jensen</u>, 608 F.2d 1349, 1356 (10th Cir. 1979) (holding interpretation of NASD rules proper subject of expert testimony, and not legal conclusion).  The Court accordingly finds that Carasick's proposed testimony on FINRA's rules does not constitute an inadmissible legal conclusion.

## III.   MOTION FOR SUMMARY JUDGMENT

### A.  <u>Legal Standard</u>

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  To satisfy this burden, the movant must point out to the court that "there is an absence of evidence to support the nonmoving party's case."  <u>Id.</u> at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).  Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings," but instead must present "specific

facts showing that there is a genuine issue for trial." <u>Walker v. Darby</u>, 911 F.2d 1573, 1576–77 (11th Cir. 1990).

Essentially, so long as the non-moving party has had the opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker</u>, 911 F.2d at 1577.  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249–50 (citations omitted).

The Court's function at the summary-judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id.</u> at 249.  In making this determination, the Court must discern which issues are material: "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> at 248.  In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. <u>Davis v. Williams</u>, 451 F.3d 759, 763 (11th Cir. 2006).

**B. <u>Discussion</u>**

Newbridge moves for summary judgment on numerous grounds.  Newbridge argues mainly that Plaintiffs have produced no evidence of an industry standard regarding the appropriate amount of a handling fee.  Without evidence of an industry standard, Newbridge contends that Finkel cannot prove it had a duty to charge handling

12

fees in line with its actual processing costs, thus her negligence claim must fail.

Similarly, Newbridge attacks Plaintiffs' allegations that it had a contractual obligation to

limit handling fees to its processing costs.  Newbridge also argues that Finkel's contract

and negligence claims are duplicative, and that Plaintiffs' claims are barred by Florida's

claim-splitting doctrine.  For the reasons discussed more fully herein, the Court finds

each of Newbridge's arguments without merit.  The Court therefore will deny the Motion

for Summary Judgment.

### 1. Plaintiffs Have Provided Sufficient Evidence of an Industry Standard to Support Finkel's Negligence Claim

A claim for negligence is premised upon a breach of a duty of care owed by the

defendant to the plaintiff.  E.g., 57A Am. Jur. 2d Negligence § 71 (Westlaw 2013).[4]

Evidence of an industry standard is probative of the applicable duty of care owed by a

person in that industry.  Id. § 164.  Newbridge argues that Finkel's negligence claim fails

because Plaintiffs have provided no evidence of a relevant industry standard or any

other basis for Newbridge's alleged duty of care.  DE 91 at 12–14.  To the contrary, the

Court finds that Plaintiffs have provided evidence of an industry standard that broker-

dealers such as Newbridge should not charge handling fees unrelated to actual

processing costs.

Plaintiffs' expert, Gene Carasick, testified that Conduct Rule 2430 precludes

broker-dealers from charging handling fees in excess of actual processing costs.

---

[4] The Court need not address choice-of-law at this time because the basic principle of negligence at issue here—that a plaintiff claiming negligence must establish a duty of care owed by the defendant—is uniform across the potentially relevant jurisdictions.  See, e.g., Fla. Dep't of Corr. v. Abril, 969 So. 2d 201, 204 (Fla. 2007) (per curiam); Afarian v. Mass. Elec. Co., 866 N.E.2d 901, 905 (Mass. 2007); Lamm v. Bissette Realty, Inc., 395 S.E.2d 112, 115 (N.C. 1990); Gordon v. Muchnick, 579 N.Y.S.2d 745, 746 (App. Div. 1992).

DE 102-2 at 36:24–37:11; see also DE 88-1 at 7 (Expert Report).  Newbridge's expert,

David Paulukaitis, appears to agree with Carasick, and has testified that if a firm

charges a handling fee in excess of the costs associated with processing a transaction,

the fee violates Conduct Rule 2430.  DE 102-1 at 42:13–44:10, 104:15–105:11.  As

discussed in relation to the Motion to Exclude, FINRA's rules "reflect the standard to

which all brokers are held."  Badian, 2010 U.S. Dist. LEXIS 123990, at *4–5.  This

expert testimony that Conduct Rule 2430 prohibits handling fees in excess of actual

processing costs supports the existence of an industry standard to that effect.  See

Whitaker, 2011 U.S. Dist. LEXIS 111938, at *15.[5]

Newbridge also attempts to blunt Plaintiffs' proposed industry standard by

arguing that it relates only to the disclosure of the nature of fees, and not to the

permissible amount of fees.  Newbridge contends that FINRA has never found a

handling fee to be excessive.  DE 91 at 7–8; DE 115 at 2.  Instead, FINRA has merely

objected when firms characterized charges not arising from processing costs as

handling fees.  DE 115 at 2.  For example, in Newbridge's own disciplinary proceedings

before FINRA, Newbridge was able to resolve concerns about its handling fees not by

decreasing what it charged its customers, but by re-labeling the charges as "firm

commissions."  Id.

---

[5] Newbridge also contests that Conduct Rule 2430 governs fees charged in connection with the execution of trades.  DE 91 at 19.  However, the precise applicability of Conduct Rule 2430 is the subject of conflicting evidence.  See, e.g., FINRA, Letter of Acceptance, Waiver and Consent, No. 2012032048401, at 4 (Jan. 29, 2013) (condemning handling fees "not attributable to any specific cost or expense incurred by the Firm executing the trade" as violative of Conduct Rule 2430).  Summary judgment on the issue is thus inappropriate.

Newbridge raises a distinction without a difference.  Implicit in FINRA's determination that a firm may not refer to charges beyond those arising from processing costs as handling fees is the conclusion that, when other charges are included in a handling fee, the fee is unreasonable.  Again, Newbridge's own expert appears to share this conclusion, having testified that Conduct Rule 2430 condemns handling fees containing charges other than the costs associated with processing a transaction. DE 102-1 at 42:13–44:10, 104:15–105:11.

Newbridge further contends that Conduct Rule 2430 does not establish a firm limit for handling fees because FINRA's interpretation of the rule is comparatively vague when contrasted with FINRA's guidance on commissions.  In its interpretive materials relating to commissions, FINRA has suggested that a markup of up to 5% of the amount of a transaction is usually fair.  FINRA, IM-2440-1 (2008).  In contrast, FINRA has not issued interpretive materials setting a numerical cap on handling fees.  Newbridge argues that FINRA's guidance relating to commissions illustrates that if FINRA had intended to set a specific threshold for handling fees under Conduct Rule 2430, it would have done so.  DE 91 at 17.

The Court is not persuaded, however, because FINRA *has* issued guidance relating to Conduct Rule 2430's limits for fees.  FINRA has announced that fees "must be reasonable and related to the services performed."  FINRA, 2012 Annual Letter 7 (Jan. 31, 2012).  FINRA has declared that "fee schedules must clearly reflect commission charges, and firms cannot disguise commissions by improperly describing them as charges for ancillary services."  FINRA, News Release: FINRA Fines Five Broker Dealers for Improper Handling Fees (Sept. 7, 2011), <u>available at</u>

http://www.finra.org/Newsroom/NewsReleases/2011/P124283.  Finally, FINRA has

brought disciplinary actions against broker-dealers charging handling fees "not directly

related to any specific handling services performed by the Firm, or handling-related

expenses incurred by the Firm, in processing [a] transaction."  FINRA, Letter of

Acceptance, Waiver and Consent, No. 2012032048401, at 4 (Jan. 29, 2013); see also

FINRA, Letter of Acceptance, Waiver and Consent, No. 2010022181901, at 3 (Sept. 6,

2011) (finding violation of Conduct Rule 2430 where firm charged "handling fee" that did

not "cover any direct handling-related services performed by the firm or handling-related

expenses incurred by the firm in connection with the transactions").  Therefore, though

FINRA has not set a limit on handling fees as they relate to a transaction's overall value,

it has clearly expressed that handling fees not related to actual processing costs are

unreasonable.

More fundamentally, Newbridge's arguments miss the mark because they fixate

upon the absence of some numerical cap on the amount of fees a firm can charge.

Newbridge argues repeatedly that it cannot be found negligent for the amount of its

handling fees because neither FINRA nor some industry practice have created a ceiling

against which its fees could be measured.  See, e.g., DE 88 at 6; DE 91 at 17; DE 105

at 9; DE 115 at 4, 8–9.  Finkel, however, does not assert so narrowly that Newbridge's

fees are improper for exceeding a fixed amount.  Her negligence claim instead reads:

"Newbridge breached its duty, and the standard of care expected from similar

professionals in the community under similar circumstances, by charging an

unreasonable and excessive 'handling fee' that **bore no reasonable relationship to its**

**direct and actual costs** in processing transactions."  DE 86 ¶ 64 (emphasis added);

see also DE 93-1 ¶ 61 (same language in proposed Fourth Amended Class Action

Complaint).  Newbridge's contentions regarding the absence of a duty to charge

handling fees below some fixed amount do not directly address the core of Finkel's

claim: that Newbridge had a duty not to charge handling fees unrelated to its underlying

costs.[6]

In short, FINRA and the experts of both parties are in apparent agreement that a

handling fee must "be reasonable and related to the services performed" to comply with

Conduct Rule 2430.  FINRA, 2012 Annual Letter 7 (Jan. 31, 2012); see also, e.g.,

DE 102-1 at 105:4–11; DE 102-2 at 36:3–37:21.  This regulatory standard is evidence of

Newbridge's duty to charge only those handling fees relating to costs of actual services

performed.  The Court therefore finds that Plaintiffs have provided sufficient proof of a

duty of care to survive summary judgment on Finkel's negligence claim.

### 2. Plaintiffs Have Provided Sufficient Evidence to Support Their Construction of the Customer Agreement

The Customer Agreement provides that Newbridge's customers shall pay

commissions and fees at the "then prevailing rate."  DE 86-4 at 5.  Plaintiffs claim that

Newbridge breached this term of the Customer Agreement by charging excessive

---

[6] Newbridge also contends that Finkel's negligence claim is really one for "negligence *per se*" under New York law, because it is premised upon the idea that a violation of FINRA's regulations is a *per se* breach of the duty of care.  DE 91 at 14 n.7. Newbridge then argues that the claim must fail because violation of a regulatory rule cannot constitute negligence *per se*.  Id. (citing Bd. of Educ. v. Grillo, 959 N.Y.S.2d 87 (Table) (Sup. Ct. 2012)).  The Court rejects Newbridge's attempt to characterize Finkel's negligence claim as one for negligence *per se*.  Finkel does not argue that Newbridge is guilty of negligence for mere breach of Conduct Rule 2430.  Instead, Finkel argues that the rule establishes an industry standard and that Newbridge negligently charged fees in violation of the standard.  Moreover, although violation of a rule, as contrasted with a legislative enactment, cannot support a claim of negligence *per se*, the violation can provide "some evidence of negligence."  Grillo, 959 N.Y.S.2d 87 (Table); accord White v. Long, 612 N.Y.S.2d 482, 484 (App. Div. 1994).

handling fees unrelated to its actual processing costs.  Newbridge counters that

Plaintiffs have provided no evidence that handling fees at the "then prevailing rate" are

limited to processing costs.  The Court finds that Plaintiffs have provided sufficient

factual support for their interpretation of the Customer Agreement, and will accordingly

deny summary judgment on the breach-of-contract claim.

Under New York law, contract interpretation is generally a legal question suitable

for resolution by the Court on summary judgment.  LaSalle Bank Nat'l Ass'n v. Nomura

Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005).[7]  However, the construction of an

ambiguous contract term poses a factual question when reference to extrinsic evidence

is needed to give meaning to the term.  Id.  When a non-movant raises an issue of fact

to support its construction of an ambiguous term, summary judgment is inappropriate.

Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 574 (2d Cir. 1993).  Here,

the term "then prevailing rate" as used in the Customer Agreement is not clear on its

face.  The Customer Agreement does not define the term.  Taken in context, the "then

prevailing rate" could mean many things to reasonable individuals familiar with the

securities industry, such as the predominant rate charged by others in the industry, the

average rate charged by Newbridge to its customers in comparable transactions, or the

going rate of underlying processing costs at a given moment.  The term is therefore

ambiguous, and reference to extrinsic evidence is necessary to give it meaning.  See

LaSalle Bank Nat'l Ass'n, 424 F.3d at 205; see also Bank of N.Y. v. First Millennium,

Inc., 607 F.3d 905, 914 (2d Cir. 2010) (term is ambiguous when term could suggest

multiple meanings to reasonable person in industry).

---

[7] The parties agree that New York law governs the Customer Agreement.  DE 91
at 14 n.6; DE 112 at 11 n.4.

The term "then prevailing rate" may be construed to reflect the dominant rates used at a given time in comparable transactions.  See Aycock v. Vantage Mgmt. Co., 554 S.W.2d 235, 236–37 (Tex. 1977); see also American Heritage Dictionary 982 (2d coll. ed. 1985) (defining "prevailing" as "[m]ost frequent or common; predominant").  Plaintiffs have provided evidence of an industry standard requiring that handling fees bear a reasonable relationship to actual processing costs.  See supra at 13–17.  This industry standard would presumably reflect actual common practices across broker-dealers.  The Court thus finds that Plaintiffs' evidence can support a reasonable inference that handling fees at "then prevailing rate" must also bear a relationship to actual costs.

Newbridge responds that handling fees across the industry "vary wildly," thus the "then prevailing rate" cannot be established by reference to comparable transactions.  DE 91 at 8.  Newbridge, however, fails to provide an alternative construction of the term.  Newbridge wisely does not go so far as to argue that the phrase "then prevailing rate" is entirely without meaning.  Cf. Galli v. Metz, 973 F.2d 145, 149 (2d Cir. 1992) (holding that courts should avoid constructions that render terms meaningless).  Still, Newbridge's argument would carry more persuasive force had Newbridge proposed some competing interpretation.

Plaintiffs' reading of the "then prevailing rate" also finds support in the Customer Agreement's other provisions.  Section 33 of the Customer Agreement provides that the contract's terms shall be construed to conform with the applicable laws, regulations, or rules.  DE 86-4 at 6.  Plaintiffs have provided evidence that Conduct Rule 2430 requires handling fees to relate directly to actual processing costs.  To the extent handling fees

19

at the "then prevailing rate" did not reflect Newbridge's processing costs, the fees would appear to violate Conduct Rule 2430.  Section 33, however, modifies the Customer Agreement to avoid such an outcome.  The Court views section 33 as requiring that the term "then prevailing rate" be read to conform with Conduct Rule 2430, allowing only those handling fees that reflect actual processing costs.

Finally, Remington and Finkel signed their contracts with Newbridge in 2008 and 2010, respectively.  DE 86 ¶¶ 7–8.  Newbridge argues that, because FINRA first published guidance that handling fees must reflect the underlying processing costs in 2011, the parties could not have intended to incorporate FINRA's position into the contracts they executed years earlier.  DE 115 at 3; see also FINRA, News Release: FINRA Fines Five Broker Dealers for Improper Handling Fees (Sept. 7, 2011), available at http://www.finra.org/Newsroom/NewsReleases/2011/P124283.  Conduct Rule 2430, however, was first adopted as a rule of the NASD, FINRA's predecessor organization, and was incorporated into FINRA's rules upon FINRA's 2007 formation.  See generally Busacca v. SEC, 449 F. App'x 886, 888 n.1 (11th Cir. 2011) (per curiam); FINRA, FINRA Rules, http://www.finra.org/Industry/Regulation/FINRARules/ (last visited Jan. 27, 2014).  Prior to FINRA's existence, the NASD also condemned service fees that did not reflect costs of the services purportedly underlying those fees, and brought disciplinary actions for violations of Conduct Rule 2430 on that basis.  See NASD, Default Decision, No. ELI20040411-01, at 3–5 (Apr. 20, 2007) (finding violation of Conduct Rule 2430 where fee charged in connection with purported clearing firm costs did not arise from actual clearing firm costs); NASD, Letter of Acceptance, Waiver and Consent, No. E3B20020456-01, at 4 (Sept. 25, 2006) (finding violation of Conduct

Rule 2430 where transfer fees were "largely unrelated to . . . actual costs of processing"). The concept that fees for services must reflect the costs of the purported underlying services thus long predates FINRA's 2011 guidance relating specifically to handling fees. See also Martin v. Heinold Commodities, Inc., 643 N.E.2d 734, 747–48 (Ill. 1994) (holding that plaintiffs claiming fraud could recover amount of service fee where fee was unrelated to purported underlying services). Viewing the facts in a light most favorable to Plaintiffs, the Court rejects Newbridge's contention that the obligation Plaintiffs derive from Conduct Rule 2430—to limit handling fees to amounts that reflect the purported underlying costs—arose only subsequent to the execution of the parties' contracts.[8]

In sum, Plaintiffs have provided evidence that the ambiguous term "then prevailing rate" as applied to handling fees requires the fees to reflect actual processing costs. The Court will accordingly deny Newbridge's request for summary judgment on the breach-of-contract claim.

### C. **Finkel's Claims Are Not Duplicative**

Newbridge further argues that Finkel's negligence claim should be dismissed as duplicative because Newbridge owed no duty of care to Finkel beyond that imposed by their contracts. DE 91 at 18–19. However, a plaintiff may maintain side-by-side negligence and contract claims based on the same underlying acts if those acts violate a legal duty independent of obligations imposed by the contract. Bullmore v. Banc of Am. Sec. LLC, 485 F. Supp. 2d 464, 469–70 (S.D.N.Y. 2007); accord Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., 110 So. 3d 399, 406–07 & n.6 (Fla. 2013). In

---

[8] The Court similarly rejects Newbridge's contention that the proposed duty of care underlying Finkel's negligence claim only arose in 2011. See DE 115 at 3.

her negligence claim, Finkel alleges that Newbridge breached a duty of care owed by broker-dealers to their customers independent of its obligations under the Customer Agreement. See supra at 13–17. The Court thus determines that the contract and negligence claims are not duplicative.

### D. **Finkel Has Not Split Her Claims**

Finally, Newbridge argues that Florida's rule against claim-splitting bars Finkel's claims.[9] According to Newbridge, Finkel brought a claim against it in a FINRA arbitration "involving the same operative facts as this current lawsuit." DE 91 at 20. Newbridge acknowledges that Finkel did not challenge its handling fees before FINRA. Id. Nevertheless, because Finkel could have raised her handling-fee claims in that arbitration, Newbridge contends that she is now barred from doing so.

Under Florida law, the prohibition against claim-splitting arises from the concept of *res judicata*. Tyson v. Viacom, Inc., 890 So. 2d 1205, 1211 (Fla. 4th DCA 2005) (en banc, per curiam). *Res judicata* bars a party from raising an identical claim in two actions. Leahy v. Batmasian, 960 So. 2d 14, 18 (Fla. 4th DCA 2007). Claims are identical if the "facts or evidence necessary to maintain the suit are the same in both actions." Tyson, 890 So. 2d at 1209 (internal quotation marks omitted).

Here, Finkel's claims in the FINRA arbitration accused Newbridge of recommending unsuitable investments, reckless investment management, breach of fiduciary duty arising from Newbridge's allegedly self-interested actions, and failure to supervise. DE 92-9 at 6–9. Finkel's claims notably did *not* involve allegations of

---

[9] Newbridge also contends that Remington's contract claim is barred by the claim-splitting doctrine. DE 91 at 20. The Court has already rejected Newbridge's claim-splitting argument as it pertains to Remington in its Order granting Plaintiffs leave to file their Third Amended Class Action Complaint. DE 84 at 6–7.

improper handling fees, a breach of contract arising from excessive handling fees, or a breach of the standards set forth in Conduct Rule 2430.  The facts and evidence relating to Newbridge's alleged mismanagement of Finkel's investments at issue in the FINRA arbitration are distinct from the facts and evidence in this action relating to Newbridge's allegedly improper handling fees.  The Court thus finds that the claims in the FINRA arbitration and this action are not identical, and Florida's rule against claim splitting does not bar Finkel's claims.  See Lozman v. City of Riviera Beach, 713 F.3d 1066, 1074–78 (11th Cir. 2013).[10]

## IV.  MOTION TO AMEND

### A.  Legal Standard

A pretrial scheduling order "controls the course of the action unless the court modifies it."  Fed. R. Civ. P. 16(d).  The "schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension."  Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998) (per curiam) (internal quotation marks omitted).  Therefore, Plaintiffs must establish good cause for their delay in seeking to amend the pleadings after the Court's deadline for amendment before the Court may consider whether to grant leave to amend under Rule 15.  See id. at 1419; see also S. Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 (11th Cir. 2009) (per curiam) ("A plaintiff seeking leave to amend

---

[10] Newbridge assumes in its papers that Florida's rule on claim-splitting applies in this action.  Because the substance of Florida's claim-splitting rule does not justify the relief Newbridge seeks, the Court will not address its applicability.

its complaint after the deadline designated in a scheduling order must demonstrate 'good cause' under Fed. R. Civ. P. 16(b).").

Once a party seeking untimely amendment has met the "good cause" standard of Rule 16(b), the Court will examine whether the substance of the amendment meets the requirements of Rule 15(a)(2).  "[A] party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Supreme Court has construed Rule 15(a)(2) as follows:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); see also McKinley v. Kaplan, 177 F.3d 1253, 1258 (11th Cir. 1999) (per curiam).  "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."  Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) (per curiam).

## B. Discussion

In the Motion to Amend, Plaintiffs seek the Court's leave to file a Fourth Amended Class Action Complaint ("Proposed Complaint").  See DE 93.  The Proposed Complaint substantially narrows the allegations of the Third Amended Class Action Complaint to remove any reference to Newbridge's allegedly improper discrimination among its customers and eliminates Remington as a plaintiff.  See generally DE 93-1. Plaintiffs made these changes in response to concerns expressed in the Court's prior

Order Denying Motion for Class Certification.  Finkel also seeks the Court's leave to file a Renewed Motion for Class Certification and to Appoint Class Counsel.  <u>See</u> DE 93-2.

### 1.  <u>The Court Will Permit Plaintiffs to File the Proposed Complaint</u>

The time for the amendment of pleadings in this action expired on August 5, 2013.  <u>See</u> DE 38.  Plaintiffs, however, filed the Motion to Amend after that deadline, on November 18, 2013.  <u>See</u> DE 93.  Plaintiffs must therefore establish good cause for their delay in seeking amendment before the Court will consider the merits of the proposed amendment.  <u>See</u> Fed. R. Civ. P. 16(b)(4).

The Proposed Complaint addresses concerns expressed by the Court in its Order Denying Motion for Class Certification.  That Order issued on November 12, 2013.  <u>See</u> DE 89.  Plaintiffs could not have responded to the Order prior to its issuance, but they did respond as promptly as possible by seeking to amend their pleadings a mere six days after the Court's decision.  <u>See</u> DE 93.  The Court thus finds Plaintiffs' delay in seeking amendment to be justified by good cause, and will address the merits of the Motion to Amend under Rule 15.

Under the liberal standard of Rule 15, leave to amend should be freely given.  <u>Foman</u>, 371 U.S. at 182.  Newbridge contends that amendment is inappropriate in this case because the Proposed Complaint is subject to immediate summary judgment, and thus futile.  DE 106 at 7–11.  In support, however, Newbridge merely reiterates its arguments for summary judgment—arguments the Court has already rejected.  Because Finkel's claims are not subject to immediate summary judgment, the Court finds that the filing of the Proposed Complaint is not futile.  <u>See</u> <u>Cockrell</u>, 510 F.3d at 1310.  Nor does Newbridge demonstrate any other basis for denial of leave to

amend, such as bad faith, dilatory motive, or undue prejudice.  See <u>Foman</u>, 371 U.S. at 182.  The Court therefore will grant leave to file the Proposed Complaint.

### 2. The Court Will Allow Remington to Dismiss His Claim Without Prejudice

In conjunction with Plaintiffs' request to file the Proposed Complaint, Remington also seeks to voluntarily dismiss his breach-of-contract claim without prejudice pursuant to Fed. R. Civ. P. 41(a)(2).  DE 97 at 5–6.  Newbridge does not oppose the voluntary dismissal, but requests that the dismissal be with prejudice.  DE 106 at 9 n.2. Newbridge argues that the claim should be barred as meritless for the reasons set forth in its Motion for Summary Judgment.  <u>Id.</u>  The Court, however, has rejected the Motion for Summary Judgment, and Newbridge has not stated any other grounds supporting its argument for dismissal with prejudice.  Nor does Newbridge suggest that Remington seeks to dismiss his claim for any improper purpose, such as delay.  The Court will therefore exercise its discretion to dismiss Remington's contract claim without prejudice. <u>See</u> Fed. R. Civ. P. 41(a)(2).

### 3. Finkel May File Her Renewed Motion for Class Certification and to Appoint Class Counsel

Having narrowed the allegations of her pleadings in response to the Court's denial of class certification, Finkel now also seeks leave to file a Renewed Motion for Class Certification and to Appoint Class Counsel.  Newbridge opposes Finkel's request, arguing that Finkel seeks reconsideration of the Court's denial of class certification, and that the high hurdle for reconsideration of a prior order has not been met.  DE 106 at 4–6.  The Court, however, does not construe Finkel's renewed request for class certification as one for reconsideration of prior determinations, and will allow Finkel to file her renewed motion.

26

In denying class certification, the Court found that Finkel's negligence claim involving discriminatory pricing would require an assessment of the facts and circumstances surrounding the reasons various fees were charged to class members at each of Newbridge's offices.  DE 89 at 9.  The Court thus concluded that Finkel's claim was not typical of the claims of customers of other offices.  Id.  Moreover, the Court doubted that Finkel could adequately represent the interests of class members who were the "winners" of the alleged discrimination, or in other words, those class members who may have been charged discriminatorily lower fees.  Id. at 10.

Finkel has now abandoned those aspects of her negligence claim based upon unfair discrimination, and premises her amended claim solely upon Newbridge's charging of handling fees unrelated to actual processing costs.  See generally DE 93-1.  Finkel therefore does not seek to relitigate the Court's prior determinations regarding the difficulties presented by allegations of discrimination.  Instead, Finkel seeks certification of a newly defined class posing different issues for the Court's consideration.

The Court, of course, may revisit a grant or denial of class certification at any time.  Fed. R. Civ. P. 23(c)(1)(C); Culpepper v. Irwin Mortg. Corp., 491 F.3d 1260, 1275 (11th Cir. 2007).  The Court finds that the narrowed allegations of the Proposed Complaint provide sufficient grounds to warrant review of the issue.  As the submissions of the parties will aid the Court in reaching the correct determination, the Court will allow Finkel to file her Renewed Motion for Class Certification and to Appoint Class Counsel.

## V.   CONCLUSION

It is accordingly **ORDERED AND ADJUDGED** as follows:

(1)   Newbridge's Motion *In Limine* to Exclude Testimony from Plaintiffs' Expert, Gene

E. Carasick, Esq. [DE 88] is **DENIED**.

(2)   Newbridge's Motion for Summary Judgment [DE 91] is **DENIED**.

(3)   Plaintiffs' Motion to Voluntarily Dismiss Plaintiff Remington's Claim, and for Leave

for Plaintiff Finkel to File Her Fourth Amended Complaint and Renewed Motion

for Class Certification [DE 93] is **GRANTED**.  Plaintiff Remington's claim for

breach of contract is **DISMISSED without prejudice**.  Plaintiff Finkel is directed

to refile her Fourth Amended Class Action Complaint and her Renewed Motion

for Class Certification and to Appoint Class Counsel in accordance with Rule

15.1 of the Local Rules of the United States District Court for the Southern

District of Florida.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 7th day of February, 2014.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF