IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**CASE NO.: 13-60384-CIV-COHN-SELTZER**

URSULA FINKEL, on her own behalf
and on behalf of those similarly situated,

    Plaintiff,

v.                                                **CLASS ACTION**

NEWBRIDGE SECURITIES
CORPORATION,

    Defendant.
_____/

## FOURTH AMENDED CLASS ACTION COMPLAINT

Plaintiff Ursula Finkel ("Plaintiff" or "Finkel"), on her own behalf and on behalf of those similarly situated (collectively, the "Customers" or "Class Members"), by and through undersigned counsel, sues Defendant Newbridge Securities Corporation ("Newbridge"), and allege the following based upon personal knowledge as to the allegations regarding herself, and on information and belief as to other allegations:

### INTRODUCTION

1.     This lawsuit is brought as a class action by and on behalf of Customers whom Newbridge took advantage of by charging an unreasonable "handling fee" when it executed trades for its Customers.

2.     Newbridge's so-called "handling fee", which reached as high as $59.95 for each trade, was charged to Customers *in addition to* the trade commission that Newbridge earned on

these transactions. These "handling fees" bore no reasonable relationship to the direct and actual "handling" costs associated with processing these transactions.

3. By charging this unreasonable "handling fee", Newbridge breached its contractual and common law duties to its Customers.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed Class is a resident of a different state than Newbridge.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Newbridge is subject to personal jurisdiction here and regularly conducts business in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in this district.

6. This Court has personal jurisdiction over Newbridge because it is engaged in substantial and not isolated activity within this state, having its principal place of business in Broward County, Florida. Additionally, the causes of action brought in this Complaint arise from Newbridge (a) operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; (b) committing a tortious act within this state; and/or (c) breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

**RICHMAN GREER, P.A.**
Miami • West Palm Beach

**PARTIES**

7.      Plaintiff Finkel is a resident of the State of North Carolina. Finkel became a Customer of Newbridge on or about May 3, 2010. A true and correct copy of Finkel's Brokerage Account Application and Customer Agreement is attached hereto as **Exhibit "A."**[1] Finkel ended her relationship with Newbridge in or about January 2013. On numerous occasions during that timeframe, Newbridge charged Finkel the "handling fee" that is the subject of this lawsuit.

8.      Defendant Newbridge is a Virginia Corporation which maintains its principal place of business in Fort Lauderdale, Broward County, Florida, and is authorized to do business in this state. Among other things, Newbridge is engaged in the business of providing securities brokerage services to individuals and corporate clients.

9.      Newbridge was formed in December 1997. Since 2000, it has been registered as a broker-dealer with the Securities and Exchange Commission (SEC) and the Financial Industry Regulatory Authority (FINRA) – the largest independent regulator of all securities firms doing business in the United States. Since September 2003 and July 2006, Newbridge has been registered with the NYSE and NASDAQ, respectively. It is also a member of the Securities Investor Protection Corporation (SIPC).

10.     According to its website (www.newbridgesecurities.com), Newbridge maintains offices in Florida, New Jersey, New York, Illinois, and Arizona. It currently operates in 52 states and territories and employs approximately 269 registered representatives.

---

[1] Sensitive personal and financial information has been redacted.

## CLASS ACTION ALLEGATIONS

11.    Plaintiff brings this action on her own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

12.    The proposed Class is defined as:

All former and current customers of Newbridge in the United States from whom Newbridge deducted, retained, and/or charged a per transaction "handling fee" that exceeded its direct and actual costs in processing the transaction at any time (a) within three (3) years preceding the filing of this lawsuit and through January 22, 2013, or (b) between June 1, 2008 and January 22, 2013, if the customer signed Newbridge's main customer agreement on or after June 1, 2008 (the "Class Period").

13.    Excluded from the Class are Newbridge, its parents, subsidiaries, affiliates, officers and directors, any entity in which Newbridge has a controlling interest, all Customers who make a timely selection to be excluded, governmental entities, all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and any of the foregoing's legal heirs and assigns.

14.    Also excluded from the class are former or current Customers who, in connection with various regulatory proceedings brought against Newbridge as described more fully *infra*, were reimbursed in full for the unreasonable and unfairly discriminatory "handling fees" charged by Newbridge.

15.    Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

16.    Plaintiff does not currently know the exact number of Class Members or their identities because such information is in the exclusive control of Newbridge and can only be ascertained by review of its records. However, Plaintiffs believe that Class Members number

somewhere between 10,000 and 12,000, and are thus sufficiently numerous and geographically dispersed so that joinder of all Class Members is impracticable. Plaintiffs further believe that Newbridge charged the "handling fee" on thousands of occasions during the Class Period. Upon information and belief, the amount in controversy easily exceeds $5,000,000.00.

17. The claims of Plaintiff are typical of the Class, in that Plaintiff, like all Class Members, was charged this unreasonable "handling fee." Further, the factual basis of Newbridge's misconduct is common to all Class Members, and resulted in injury to all Class Members.

18. Pursuant to Rule 23(b)(3), there are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class Members, including whether Newbridge:

   a. Charged a "handling fee" that exceeded its direct and actual costs in processing Class Members' transactions;

   b. Charged a "handling fee" that was unreasonable;

   c. Breached its agreements with Class Members by charging an unreasonable "handling fee" that exceeded its direct and actual costs in processing Class Members' transactions;

   d. Was negligent by charging an unreasonable "handling fee" that exceeded its direct and actual costs in processing Class Members' transactions;

19. Additionally, another common question of law and fact is the appropriate measure of damages sustained by Plaintiff and other Class Members.

20. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense, and risk of inconsistent rulings that numerous

individual actions would cause. Class treatment will also permit the adjudication of relatively small claims by Class Members who otherwise might not be able to afford to litigate their claims individually. This class action presents no difficulties in management that would preclude maintenance as a class action.

21. This forum is particularly desirable for the prosecution of this class action because Newbridge maintains its principal place of business in this District, and presumably maintains many of those corporate records which are particularly germane to this action here. Furthermore, upon information and belief, many of Newbridge's executives and high-level decision makers reside in this District. As a result of the foregoing, litigating on a class action basis in this forum will likely decrease the cost of discovery and prosecution, generally.

22. Plaintiff has suffered the harm alleged on behalf of the Class, and has no interests antagonistic to the interests of any other Class Members. She is committed to the prosecution of this action and has retained counsel experienced in the prosecution of class actions, and in complex commercial actions in particular. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class. Plaintiff is not aware of any other pending litigation concerning this controversy that involves Class Members.

23. Finally, the Class is readily definable and is one for which records likely exist in the files of Newbridge.

## COMMON FACTUAL ALLEGATIONS

### Various Regulatory Organizations and States have Investigated Newbridge with regard to its "Handling Fees"

24. On numerous occasions, Newbridge has been the target of various regulatory actions relating to the "handling fees" at issue in this lawsuit, including one by FINRA which resulted in payment of a $50,000 fine and the implementation of corrective action; one by the

State of Connecticut which resulted in payment of a $10,000 fine and reimbursement of the handling fees to some Connecticut customers; one by the State of New Jersey which resulted in payment of a $15,000 fine; and one by the State of Arkansas which resulted in reimbursement of the handling fees charged to some Arkansas customers.

25. According to Newbridge's own submissions in these proceedings, Newbridge acknowledged charging its Customers a "handling fee" that reached as high as $59.95 per transaction.

26. Although Newbridge characterized it as a transaction "handling fee", it bore no reasonable relationship to Newbridge's direct and actual costs in processing the transaction. In fact, Newbridge marked up its direct and actual transaction processing costs up to 700%.

27. Unquestionably, Newbridge used the "handling fee" to generate a second, unauthorized commission. Newbridge withdrew this fee directly from the investment accounts that Plaintiffs and all Class Members maintained with Newbridge.

### Newbridge owed its Customers a Duty not to Charge Unreasonable Fees

28. Newbridge, by virtue of its position as a broker-dealer, its professional skill and ability, and the level of confidence and care imposed upon other broker-dealers in similar positions, owed its Customers a duty of care that, as FINRA puts it, requires nothing less than fair dealing.

29. With regard to the imposition of a "handling fee", fair dealing requires that the fee be reasonable. As FINRA has noted, "charges and fees for services must be reasonable . . ., and it [also] applies to all charges and fees for services provided by a member firm that are not

related to the execution of a transaction." *See* FINRA's *Regulatory Notice 13-07* (January 2013), a true and correct copy of which is attached hereto as **Exhibit "B"**.[2]

### Beginning on June 1, 2008, Newbridge Contractually Obligated Itself to Only Charge Fees at the "Then Prevailing Rate" in the Industry

30. In addition to the common law duty imposed upon Newbridge as a broker-dealer to charge only fees that are reasonable, Newbridge also *contractually* obligated itself to charge a "handling fee" that was reasonable.

31. Beginning definitively as of June 1, 2008, Newbridge updated its customer agreement when it switched clearing houses to Legent Clearing, LLC, and agreed to only charge a handling fee "at the then prevailing rate." Specifically, such customer agreement contained the following provision:

> 27. Fees and Charges. I understand that there are charges for commissions and fees for executing buy and sell orders and for other services provided under this agreement. **I agree to pay such commissions and fees at the then prevailing rate**. I acknowledge that the prevailing rate of commissions and fees may change and that change may occur without notice. I agree to be bound by such changes. I specifically agree to pay a reasonable rate of Interest on the principal amount of any debit balance carried with respect to the account. Interest due on the account is payable on demand. I also agree to pay such expenses incurred by You in connection with collection of any unpaid balance due on My accounts, including, but not limited to, attorneys' fees allowed by law.

(Emphasis added). True and correct copies of the three agreements in effect from June 1, 2008 through the present are attached hereto as **Composite Exhibit "C"**.

32. The phrase "then prevailing rate" creates an objective standard, reflective of an average, reasonable amount charged in the industry.

---

[2] Also accessible at:
http://www.finra.org/web/groups/industry/@ip/@reg/@notice/documents/notices/p197796.pdf
(last accessed June 18, 2013).

33.     At all times material, the prevailing rate in the industry for handling fees was the amount of the direct and actual costs that were incurred by the brokerage firm on behalf of the customer in processing the transaction.

### Newbridge's "Handling Fees" were Unreasonable, and were Significantly Higher than the "Then Prevailing Rate"

34.     FINRA has made it clear that there can be no mark-up on a "handling fee"; otherwise, it constitutes a firm commission and not a true "handling fee". *See e.g.*, FINRA's Sept. 7, 2011 News Release, "FINRA Fines Five Broker Dealers for Improper Handling Fees", attached hereto as **Exhibit "D"**.

35.     Therefore, under both the common law standard of care owed by a broker-dealer to its customers *and* under Newbridge's contractual promise to charge a fee at the "then prevailing rate", Newbridge could not charge a "handling fee" that exceeded its direct and actual costs in processing these transactions.

36.     Since June 1, 2008, the direct and actual costs that Newbridge was charged by its clearing house – Legent Clearing, LLC/COR Clearing, LLC – to process these transactions never exceeded $10.50.

37.     Instead of charging Customers no more than its direct and actual costs (that in no event exceeded $10.50) as required by its common law and contractual duties, Newbridge's "handling fee" reached as high as $59.95. The portion of Newbridge's "handling fee" which exceeded its direct and actual costs was purely profit to the firm.

38.     Newbridge knew that it was charging an unreasonable "handling fee", far in excess of the "then prevailing rate", and in direct contravention of the common law and contractual duties it owed its Customers.

39. Newbridge's knowledge in that regard is evidenced by the fact that its fee schedules, and the disclosure language therein, underwent a dramatic change in language over time to slowly, but surely acknowledge that Newbridge was charging its Customers a "handling fee" that exceeded its direct and actual costs in processing the transactions, and was comprised primarily of a firm commission.

40. For ease of comparison, the relevant information contained in the various fee schedules is listed below. (In the disclosure language, any changes from the prior year are indicated with an underline for added language and a strikethrough for deleted language).

| Year | Fee Description | Amount | Disclosure language |
|---|---|---|---|
| 2007-2008 | Postage and Handling | Up to $49.95 | The above fees for services provided by Legent may be charged to your account at the time of or prior to the service being rendered. Newbridge may charge fees in addition to the above. Revisions will be provided to clients at least 30 days before the implementing of new or revised fees. Please contact your account executive if you have any questions or need additional information. |
| 2008-2009 | Postage and Handling | Up to $59.95 | [same as above] |
| 2009 | Postage and Handling | Up to $59.95 | The above fees for services provided by Legent may be charged to your account at the time of or prior to the service being rendered. Newbridge may <u>receive a portion of the fees charged by the clearing firm (including, but not limited to, margin interest).</u> ~~charge fees in addition to the above.~~ Revisions will be provided to clients at least 30 days before the implementing of new or revised fees. Please contact your account executive if you have any questions or need additional information. |
| 2010-2011 | Postage and Handling | Up to $39.95 | [same as above] |

| 2010-2011 (As of 9-9-2010) | Postage and Handling | Up to $39.95 | Order Handling Fee: Customer transactions may be charged a "Handling Fee", which is disclosed via each customer confirmation.  This fee is comprised of processing/operational costs assessed by Legent & Newbridge.  All parties including your broker may receive remuneration of this fee in varying percentages.  This fee may also vary for each broker based upon various factors including geographic office location.  Contact your broker of Newbridge's home office for further details. *The above fees for services provided by Legent may be charged to your account at the time of or prior to the service being rendered.  Newbridge may receive a portion of the fees charged by the clearing firm (including, but not limited to, margin interest). Revisions will be provided to clients at least 30 days before the implementing of new or revised fees. Please contact your account executive if you have any questions or need additional information. |
|---|---|---|---|
| 2011 (as of 12-2011) | Postage and Handling | Up to $39.95 | Order Handling Fee: Customer transactions in fee eligible securities will ~~may~~ be charged a "Handling Fee", which is disclosed via each customer confirmation. ~~This fee is comprised of processing/operational costs assessed by Legent & Newbridge. All parties including your broker may receive remuneration of this fee in varying percentages. This fee may also vary for each broker based upon various factors including geographic office location.~~ A portion of this fee is comprised of direct transaction and postage charges imposed by Legent, and the balance is received by Newbridge as additional revenue, portions of which may be shared with your broker, and ultimately will constitute additional compensation to Newbridge and/or your broker.  This fee is in addition to any other commission charges.  Contact your broker or |

-11-

| | | | |
|---|---|---|---|
| | | | Newbridge's corporate headquarters for further details and a list of non-fee eligible securities. |
| 2012 (as of 02-17-2012) | Postage and Handling | $29.95 | [same as above] |
| 2012 (as of 11-6-2012) | Postage and Handling | $29.95 | [same as above but replaces "Legent" with "Cor Clearing"] |
| (as of 01-22-2013) | Postage and Firm Commission | $29.95 | ~~Order Handling Fee: Customer transactions in fee eligible securities will be charged a "Handling Fee", which is disclosed via each customer confirmation. A portion of this fee is comprised of direct transaction and postage charges imposed by Legent, and the balance is received by Newbridge as additional revenue, portions of which may be shared with your broker, and ultimately will constitute additional compensation to Newbridge and/or your broker. This fee is in addition to any other commission charges. Contact your broker or Newbridge's corporate headquarters for further details and a list of non fee eligible securities.~~ <u>The above fees for services provided by Cor may be charged to your account at the time of or prior to the service being rendered. Newbridge may receive a portion of the fees charged by the clearing firm (including, but not limited to, margin interest). Revisions will be provided to clients at least 30 days before the implementing of new or revised fees. Please contact your account executive if you have any questions or need additional information.</u> |
| (as of 02-15-2013) | Firm Commission | $29.95 | [same as above] |

41. As reflected above, Newbridge changed the description of the "handling fee" from "Postage and Handling" to "Postage and Firm Commission," and then, only a few weeks later in January 2013, to just "Firm Commission". In doing so, Newbridge tacitly admitted it had been

charging an unreasonable "handling fee" that exceeded its direct and actual costs in processing transactions.

## Newbridge Enters into a Letter of Acceptance, Waiver and Consent with FINRA regarding its Improper "Handling Fees"

42.     Newbridge's decision to accurately describe its "handling fee" as a profit generating commission was not, however, self-motivated.  On January 22, 2013, Newbridge entered into a Letter of Acceptance, Waiver and Consent (commonly referred to as an "AWC") with FINRA following an investigation into Newbridge's handling fee practices.  A true and correct copy of the January 22, 2013 AWC is attached hereto as **Exhibit "E"**.

43.      In the AWC, FINRA made numerous findings regarding the impropriety of Newbridge's "handling fee."  Those findings included the following:[3]

> During the period from January 2008 through May 2011, Newbridge charged its customers a fee for "handling," in addition to a commission, on equity security trades.  The handling fee varied in amount from trade to trade, in some cases reaching as high as $39.95 per trade.[4]  Although reflected on customer trade confirmations as a charge for "handling," the charge was not reasonably related to any direct handling-related services performed by the Firm, or handling–related expenses incurred by the Firm, in processing the transaction, but rather, was effectively an additional commission.  The characterization of the charge as being for "handling" was therefore inaccurate and improper.

44.     Based on FINRA's findings, Newbridge agreed to a $50,000 fine and to certify that within 90 days it would implement corrective action to: (1) "identify as a commission…, and not as any charge or fee for postage, handling, miscellaneous, or the like, any transaction-based charge of fee that constitutes, in whole or in part, remuneration to the Firm and/or any associated

---

[3] As part of the AWC, Newbridge agreed that it "may not take any action or make or permit to be made any public statement, including in regulatory filings or otherwise, denying, directly or indirectly, any finding in this AWC or create the impression that the AWC is without factual basis."  *See* Section III(C)(4) of the January 22, 2013 AWC, Exhibit "E".

[4] In fact, the "handling fee" reached as high as $59.95 per trade during the Class Period.

person(s) of the Firm"; (2) fully and accurately disclose "the specific service(s) or cost(s)" of any fee or charge it incurs through its clearinghouse or in the processing of trades and passes through to its customers and retaining all records to substantiate the costs and establish how the fee charged the customers was calculated; and (3) "revise its supervisory procedures to address the requirements [of points (1) and (2)] … and provide training to all associated persons relating to same." *See* Section I(B) of the January 22, 2013 AWC, Exhibit "E."

45. In March 2013, Newbridge sent revised trade confirmations to Customers who made trades after September 2012, including Plaintiff Finkel. Consistent with the AWC, these revised confirmations also replaced the description of the fee in question from "handling fee" to a "firm commission." For ease of comparison, attached hereto as **Composite Exhibit "F"** is a sampling of trade confirmations for Plaintiff Finkel during the September 2012 through November 2012 timeframe with each trade confirmation as it was originally issued followed immediately by the corresponding "corrected" trade confirmation which shows that the description "handling fee" was replaced by "firm commission".[5]

46. All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

## COUNT I
### (Breach of Contract)

47. Plaintiff re-alleges paragraphs 1 through 46, above, as if fully set forth herein.

48. Plaintiff brings this breach of contract claim on her own behalf, and on behalf of all Class Members who signed Newbridge's customer agreement on or after June 1, 2008, and who were charged a "handling fee" at any time from that date forward through January 22, 2013.

---

[5] Sensitive personal and financial information has been redacted.

**RICHMAN GREER, P.A.**
Miami • West Palm Beach

49. All Class Members (including Plaintiff Finkel) who joined Newbridge on or after June 1, 2008 executed and entered into a valid customer agreement with Newbridge which contains the "then prevailing rate" provision set forth above and in Composite Exhibit "C."

50. Plaintiff (and Class Members) expressly agreed to pay certain fees associated with the services provided by Newbridge, but only at the "then prevailing rate." *See* Composite Exhibit "C".

51. As set forth more fully above, the "then prevailing rate" for "handling fees" is the broker-dealer's direct and actual costs in processing a particular transaction.

52. Newbridge breached its customer agreements by charging Plaintiff (and Class Members) an excessive and unreasonable "handling fee" (of up to $59.95 per trade) that bore no reasonable relationship to its direct and actual costs in processing transactions (which never exceeded $10.50).

53. For example, Newbridge charged Plaintiff a "handling fee" as high as $29.95, despite the fact that Newbridge's direct and actual cost in processing her transactions (*i.e.*, the "then prevailing rate") was between $8.00 and $10.50.

54. Plaintiff and the Class Members have performed all, or substantially all, of the obligations imposed on them under their June 1, 2008 and forward contracts with Newbridge.

55. Plaintiffs and the Class have suffered damages as a result of Newbridge's breaches of contract.

## COUNT II
### (Negligence)

56.     Plaintiff re-alleges paragraphs 1 through 29 and 34 through 46, above, as if fully set forth herein.

57.     Plaintiff brings this negligence claim on her own behalf, and on behalf of all Class Members who were charged a "handling fee" within three (3) years preceding the filing of this lawsuit and through January 22, 2013.

58.     As a securities broker, Newbridge owed its Customers a duty of care in accordance with the standard of care used by similar professionals in the community under similar circumstances.  That includes, but is not limited to, a duty of fair dealing and to act in the best interests of its Customers without regard to its own financial or other interests.

59.     Although exchange rules might not provide for a private right of action in tort, they do set forth the standards of care that are expected of broker-dealers such as Newbridge with regard to the imposition of fees.

60.     One such example is NASD Rule 2430, which "requires that charges and fees for services must be reasonable, and it [also] applies to all charges and fees for services provided by a member firm that are not related to the execution of a transaction."  *See* Exhibit "B", *supra*.

61.     Newbridge breached its duty, and the standard of care expected from similar professionals in the community under similar circumstances, by charging an unreasonable and excessive "handling fee" that bore no reasonable relationship to its direct and actual costs in processing transactions.

62.     For example, Newbridge charged Plaintiff a "handling fee" as high as $29.95, despite the fact that Newbridge's direct and actual cost in processing her transactions was between $8.00 and $10.50.

-16-

63. The "handling fee" that Newbridge charged Plaintiff (and all Class Members) was so grossly excessive to its direct and actual costs that its markup reached as high as 700% or more. Newbridge simply retained the markup as an additional commission.

64. As a matter of law, it is unreasonable and a breach of Newbridge's duties to charge a markup of up to 700% on a cost that is merely a transaction processing cost.

65. As a direct and proximate result of the foregoing, Plaintiff and the Class have suffered damages.

## JURY DEMAND

66. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of all other similarly situated, prays for relief and judgment as follows:

A. Certifying the proposed Class and approving Plaintiff as class representative;

B. Appointing Richman Greer, P.A., The Law Offices of Place & Hanley, PLLC, and Blum Law Group as class counsel;

C. Awarding Plaintiff and the Class damages in an amount to be proven at trial, along with costs, interest, and attorneys' fees; and

D. Awarding any further relief the Court deems just and proper.

Dated: February 11, 2014                    Respectfully submitted,


By:   s/ Lyle E. Shapiro
      Lyle E. Shapiro (FBN: 0120324)
      lshapiro@richmangreer.com
      Manuel A. Garcia-Linares (FBN: 0985252)
      mlinares@richmangreer.com
      Eric M. Sodhi (FBN: 0583871)
      esodhi@richmangreer.com

        Joshua L. Spoont (FBN: 053263)
        jspoont@richmangreer.com
        RICHMAN GREER, P.A.
        396 Alhambra Circle
        North Tower, 14th Floor
        Miami, Florida 33134
        Telephone: (305) 373-4000
        Facsimile: (305) 373-4099
        *Attorneys for Ursula Finkel, on her own behalf and on behalf of those similarly situated.*

## CERTIFICATE OF SERVICE

I HEREBY certify that on February 11, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        By:   s/ Lyle E. Shapiro

**SERVICE LIST**
Ursula Finkel vs. Newbridge Securities Corporation
Case No. 13-60384-CIV-COHN-SELTZER
United States District Court, Southern District of Florida

| | |
|---|---|
| Lyle E. Shapiro<br>lshapiro@richmangreer.com<br>Manuel A. Garcia-Linares<br>mlinares@richmangreer.com<br>Eric M. Sodhi<br>esodhi@richmangreer.com<br>Joshua L. Spoont<br>jspoont@richmangreer.com<br>RICHMAN GREER, P.A.<br>396 Alhambra Circle, North Tower, 14th Floor<br>Miami, FL 33134<br>*Attorneys for Plaintiffs* | Randall C. Place, Esq.<br>Place and Hanley, PLLC<br>30 Town Square Blvd, Suite 202<br>Asheville, N.C. 28803<br>randall_place@placeandhanley.com<br>*Attorneys for Plaintiffs* |
| Darren Blum, Esq.<br>Blum Law Group<br>110 E. Broward Blvd.<br>Suite 1700<br>Ft. Lauderdale, FL 33301<br>blum@stockattorneys.com<br>*Attorneys for Plaintiffs* | Gregg J. Breitbart, Esq.<br>Kaufman Dolowich Voluck & Gonzo LLP<br>2101 N.W. Corporate Blvd., Suite 218<br>Boca Raton, FL 33431<br>gbreitbart@kdvglaw.com<br>*Attorneys for Defendant* |
| Dennis A. Nowak, Esq.<br>Rumberger, Kirk & Caldwell, P.A.<br>Brickell Biscayne Centre<br>Suite 3000<br>80 S.W. 8th Street<br>Miami, FL 33130<br>dnowak@rumberger.com<br>*Attorneys for Defendant* | |